# ILLINOIS OFFICIAL REPORTS

## *People v. Lara*, 2012 IL 112370

| | |
|---|---|
| Caption in Supreme Court: | THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. JASON LARA, Appellee. |
| Docket No. | 112370 |
| Filed | October 18, 2012 |
| Modified upon denial of rehearing | February 7, 2013 |
| Held<br><br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The State need not present independent evidence corroborating every element of the charged offense before a defendant's statement may be used to prove the *corpus delicti*; and a predatory-criminal-sexual-assault defendant's confession to penetration was properly admitted even though the victim had stated only that he touched her private part. |
| Decision Under Review | Appeal from the Appellate Court for the First District; heard in that court on appeal from the Circuit Court of Cook County, the Hon. Brian Flaherty and the Hon. Kenneth J. Wadas, Judges, presiding. |
| Judgment | Appellate court judgment reversed.<br>Cause remanded with directions. |

| Counsel on Appeal | Lisa Madigan, Attorney General, of Springfield, and Anita Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Annette Collins and Jessica R. Ball, Assistant State's Attorneys, of counsel), for the People. |
| | |
| | Michael J. Pelletier, State Appellate Defender, Alan D. Goldberg, Deputy Defender, and Megan E. Ledbetter and Deborah K. Pugh, Assistant Appellate Defenders, of the Office of the State Appellate Defender, of Chicago, for appellee. |
| | |
| Justices | CHIEF JUSTICE KILBRIDE delivered the judgment of the court, with opinion. |
| | Justices Freeman, Garman, Karmeier, Burke, and Theis concurred in the judgment and opinion. |
| | Justice Thomas specially concurred, with opinion. |

## OPINION

¶ 1    Defendant Jason Lara was tried on two counts of predatory criminal sexual assault of a child (720 ILCS 5/12-14.1(a)(1) (West 2004)). At trial, the circuit court of Cook County admitted defendant's confession, including his statement that penetration, an element of the offenses, occurred. Defendant was convicted of both counts and sentenced to consecutive prison terms of 10 years and 8 years.

¶ 2    On appeal, defendant argued, *inter alia*, that his confession should not have been presented to the jury because it was not sufficiently corroborated by independent evidence, as required by the *corpus delicti* rule. The appellate court held that the rule required the State to produce independent evidence of the element of penetration and that insufficient independent evidence was presented to support convictions for predatory criminal sexual assault. Accordingly, the appellate court reversed defendant's convictions, reducing them to the lesser-included offense of aggravated criminal sexual abuse and remanding the cause for resentencing. 408 Ill. App. 3d 732. One justice specially concurred, disagreeing with the majority's interpretation of the *corpus delicti* rule but agreeing that the independent evidence was insufficient to establish the element of penetration required to convict defendant of predatory criminal sexual assault. 408 Ill. App. 3d at 743 (Murphy, J., specially concurring).

¶ 3    The State appealed from the appellate court's judgment. We now reverse that judgment and remand the cause to the appellate court to address two issues it did not previously consider.

¶ 4                              I. BACKGROUND

¶ 5    Defendant Jason Lara was tried before a jury on two counts of predatory criminal sexual

assault of an eight-year-old girl, J.O. (720 ILCS 5/12-14.1(a)(1) (West 2004)). In a written statement made shortly after the assaults, defendant, then 19, confessed to putting one hand in J.O.'s pants and touching her vagina on two separate occasions in January 2005. The incidents occurred while his mother was babysitting J.O. and her sister overnight at his mother's apartment. Before trial, defendant, who took medication for attention deficit disorder and epilepsy, filed a motion to suppress his statements "due to the physical, physiological, mental, emotional and/or psychological state, and as a consequence of his severe epilepsy exacerbated by stress." Defense counsel argued that defendant suffered a seizure while in custody, making him "unable to appreciate and understand the full meaning of his *Miranda* rights and any statement *** was not made voluntarily, knowingly and intelligently." After a hearing, the trial court denied defendant's suppression motion. Defendant did not appeal from that order.

¶ 6      At trial, defendant's confession was read into the record. According to his confession, defendant inserted his finger into J.O.'s vagina either "as far as his fingernail" or "as far as his fingernail up to his cuticle." In his trial testimony, however, defendant denied ever touching J.O. inappropriately and putting his hand in her pants. He testified that he lacked a clear memory about the specific circumstances surrounding his confession and that he had experienced trouble concentrating at that time. Defendant believed he had suffered an epileptic seizure while in custody, resulting in his confused state at the time of his confession. The jury heard extensive conflicting medical testimony addressing this contention as well.

¶ 7      In addition to defendant's confession, the State introduced J.O.'s out-of-court interview statements. Eight-year-old J.O. was given a "Victim Sensitive Interview" by a specially trained interviewer shortly after the two incidents were reported to the police. Detective Linda Paraday testified that she had taken notes of the interview from behind a two-way mirror. According to her notes, J.O. gave details of when and where the two incidents occurred that were consistent with those in defendant's confession. Specifically, J.O. stated that defendant was her babysitter's son. J.O. indicated that both times she and her younger sister were sleeping on the floor beside defendant's bed in the babysitter's living room, as they usually did when they stayed overnight while their mother worked.

¶ 8      Describing the first incident, J.O. explained that she was asleep when she was awakened by defendant's hand on her "private part," with her pants and underwear pulled down to her knees. When asked about where she was touched, she responded it was on the front part, "the part you use to go pee." According to the detective, J.O. stated that defendant's "hand was on her private part."

¶ 9      Describing the second incident, J.O. said that she had been to the bathroom and returned to the floor beside defendant's bed to go back to sleep when defendant again touched her. As related by Detective Paraday, J.O. stated that defendant "put his hand under her panties on her vagina." Asked by the interviewer to show where defendant touched her each time, J.O. put her hand on her vaginal area. Although initially unable to recall whether the interviewer had asked J.O. if defendant had touched the inside or outside of her private part, Detective Paraday refreshed her memory from her notes and testified that J.O. felt defendant touch her on the outside.

¶ 10    J.O. also personally testified at defendant's trial. At the time of the trial, J.O. was 12 years old. She testified that she was eight years old when defendant touched her inappropriately. Consistent with her interview statements, J.O. described two incidents that occurred when she slept overnight at defendant's apartment. During both instances, J.O. was asleep or starting to sleep when she felt defendant put his hand inside her underwear and touch her "private." The details she gave of the two incidents were consistent with both her prior statements and defendant's confession. At trial, however, J.O. was not asked whether she was touched outside or inside. Ultimately, the jury convicted defendant of both counts of predatory criminal sexual assault (PCSA), and the trial court sentenced him to consecutive prison terms of 10 years and 8 years.

¶ 11    On appeal, the appellate court reversed defendant's convictions. Writing for the majority, Justice Neville held that the *corpus delicti* of PCSA was not established because the State failed to present evidence corroborating the portion of defendant's confession establishing sexual penetration. 408 Ill. App. 3d at 741. See 720 ILCS 5/12-14.1(a)(1), 12-12(f) (West 2004). Without corroboration of the only element distinguishing PCSA from aggravated criminal sexual abuse (ACSA) (720 ILCS 5/12-16(c)(1) (West 2004)), the majority did not believe defendant's PCSA convictions could be upheld. 408 Ill. App. 3d at 741. The court, however, found sufficient corroboration of defendant's statement that he touched J.O.'s vagina to support convictions for two acts of the lesser-included offense of ACSA. Accordingly, the appellate court reduced defendant's two PCSA convictions to ACSA and remanded the cause for resentencing. 408 Ill. App. 3d at 742-43. Given its resolution of the *corpus delicti* issue, the court did not consider whether the denial of defendant's trial request for a lesser-included offense instruction on ACSA was error and, if not, whether defendant's combined 18-year sentence for his two PCSA convictions was excessive. 408 Ill. App. 3d at 743.

¶ 12    In a special concurrence, Justice Murphy disagreed with the majority's analysis of the *corpus delicti* rule, stating it improperly required corroboration of each element of the offense. 408 Ill. App. 3d at 745 (Murphy, J., specially concurring). He "fear[ed] that requiring evidence of every element may essentially flip the corroboration rule on its head ***. Essentially, this would make the confession corroboration for the victim's testimony, thereby requiring the State to prove the crime twice over ***." 408 Ill. App. 3d at 746 (Murphy, J., specially concurring). Justice Murphy specially concurred in the judgment, however, because he believed J.O.'s statement that defendant had touched her on the "outside" contradicted defendant's statement that penetration had occurred. 408 Ill. App. 3d at 744 (Murphy, J., specially concurring). This court allowed the State's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Feb. 26, 2010).

¶ 13                              II. ANALYSIS

¶ 14                          A. The *Corpus Delicti* Rule

¶ 15    On appeal, the State argues that the appellate court improperly expanded the *corpus delicti* rule to require independent evidence corroborating *every* element of the specified offense before a defendant's statement could be used to prove the *corpus delicti* of the

offense. The State asserts that this conclusion conflicts with well-established law.

¶ 16    Defendant disagrees with the State's claim that the appellate court required each element of every offense to be corroborated by independent evidence. He asserts that the element of penetration must be corroborated here because it is the only factor distinguishing PCSA from ACSA. Citing *People v. Sargent*, 239 Ill. 2d 166 (2010), and *People v. Dalton*, 91 Ill. 2d 22 (1982), defendant argues that his PCSA convictions must be reduced to ACSA because no corroborating evidence supports "the single element, sexual penetration, that distinguishes ACSA from PCSA." 408 Ill. App. 3d at 741. Because this issue presents a question of law, we review it *de novo. People v. Gutierrez*, 2012 IL 111590, ¶ 16.

¶ 17    The *corpus delicti* of an offense is simply the commission of a crime. Along with the identity of the person who committed the offense, it is one of two propositions the State must prove beyond a reasonable doubt to obtain a valid conviction. In general, the *corpus delicti* cannot be proven by a defendant's admission, confession, or out-of-court statement alone. When a defendant's confession is part of the *corpus delicti* proof, the State must also provide independent corroborating evidence. *Sargent*, 239 Ill. 2d at 183.

¶ 18    To avoid running afoul of the *corpus delicti* rule, the independent evidence need only *tend to show* the commission of a crime. It need not be so strong that it alone proves the commission of the charged offense beyond a reasonable doubt. If the corroborating evidence is sufficient, it may be considered, together with the defendant's confession, to determine if the State has sufficiently established the *corpus delicti* to support a conviction. *Sargent*, 239 Ill. 2d at 183; *People v. Willingham*, 89 Ill. 2d 352, 358-59 (1982).

¶ 19    The *corpus delicti* rule arose from courts' historical mistrust of out-of-court confessions. That mistrust is generally attributed to: (1) some individuals' tendency to confess, for various psychological reasons, to offenses that they did not commit or that did not occur, and (2) the unreliability of coerced confessions. *Sargent*, 239 Ill. 2d at 183.

¶ 20    This court has analyzed the *corpus delicti* rule in a number of decisions. We turn first to this court's decision in *Sargent*. Citing *Sargent*, the appellate majority held that the State failed to establish the *corpus delicti* of PCSA because the independent evidence offered no corroboration of the element of penetration defendant admitted in his written statement. 408 Ill. App. 3d at 740-41. Defendant correctly notes that the element of penetration is the only factor distinguishing PCSA from ACSA. 720 ILCS 5/12-14.1(a)(1) (West 2004) (listing the elements of PCSA); 720 ILCS 5/12-16(c)(1) (West 2004) (listing the elements of ACSA).

¶ 21    In *Sargent*, this court stated that corroborating evidence "must relate to the specific events on which the prosecution is predicated." *Sargent*, 239 Ill. 2d at 185. Accordingly, defendant contends, the element of penetration must be corroborated here because it is part of the "specific events" underlying the two PCSA counts charged by the State.

¶ 22    In *Sargent*, the defendant was convicted of four counts of PCSA, one involving his stepson, J.W., and three involving J.W.'s younger brother, M.G., in addition to two counts of ACSA involving M.G. The relevant issue in *Sargent* was the sufficiency of the evidence supporting certain charges that involved M.G. *Sargent*, 239 Ill. 2d at 184. After closely evaluating the grammatical forms used in the Department of Children and Family Services investigator's trial testimony and M.G.'s pretrial videotaped statements, we reversed two of

the defendant's three PCSA convictions involving M.G. because the only corroboration offered was the boy's statement acknowledging only one incident. *Sargent*, 239 Ill. 2d at 187.

¶ 23    In addition, the *Sargent* court reversed the defendant's convictions for two counts of ACSA based on allegations of fondling because "[a]side from defendant's confession, *** there was no evidence of any kind to corroborate" them. *Sargent*, 239 Ill. 2d at 184. Although the State had argued that independent evidence of the defendant's digital penetration of M.G. also provided "sufficient corroboration" of the fondling charge, the court explained that "these were separate acts which gave rise to separate charges. Our precedent demonstrates that under the corroboration rule, the independent corroborating evidence must relate to the specific events on which the prosecution is predicated." *Sargent*, 239 Ill. 2d at 184, 185. Thus, when a confession involves more than one offense, "the corroboration rule requires that there be independent evidence tending to show that defendant committed each of the offenses for which he was convicted." *Sargent*, 239 Ill. 2d at 185 (citing *People v. Bounds*, 171 Ill. 2d 1, 42-46 (1995)). Defendant primarily relies on this portion of *Sargent*.

¶ 24    While *Sargent* provides considerable insight into the *corpus delicti* rule, it does not fully resolve the specific issue before this court. The court's statement that corroboration must "relate to the specific events on which the prosecution is predicated" was addressed not to just any two separate criminal charges but particularly to criminal charges alleging distinctly different types of acts. The court did not countenance the use of evidence establishing the defendant's digital penetration of M.G. to prove the fondling allegation as well precisely because the latter constituted an entirely different type of assault affecting a different part of the victim's body. *Sargent*, 239 Ill. 2d at 185 (requiring separate corroboration where the two criminal counts alleged contact with different parts of the victim's body) (citing *People Richmond*, 341 Ill. App. 3d 39, 46 (2003)).

¶ 25    Here, unlike in *Sargent*, exactly the same type and point of contact was alleged in both PCSA counts filed against defendant. The two counts alleged that defendant "intentionally or knowingly *** inserted his finger into [J.O.'s] vagina." Two counts were charged instead of one because the assaults occurred on two different days. In applying the corroboration rule to separate counts alleging vastly different types of contact, the courts in *Sargent* and *Richmond* did not speak to the same type of circumstances at issue here.

¶ 26    Notably, however, *Sargent* recognized that in some instances one type of criminal activity could be "so closely related" to another type that "corroboration of one may suffice to corroborate the other." *Sargent*, 239 Ill. 2d at 185. Thus, *Sargent* suggests that the same corroborating evidence may suffice to support a defendant's confession to multiple offenses when the offenses possess some distinctive elements. Due to the fact-intensive nature of the inquiry, however, the question of whether certain independent evidence is sufficient to establish specific charged offenses must be decided on a case-by-case basis. Our acknowledgment in *Sargent* that not all elements of each offense must be expressly corroborated in all criminal cases seriously undermines defendant's argument here. Contrary to defendant's claim, *Sargent* may be properly read to support the general rule that corroboration is not compulsory for each element of every alleged offense.

¶ 27    Both defendant and the appellate majority also heavily rely on this court's decision in

*Dalton*, a case that preceded *Sargent* by nearly 20 years. In *Dalton*, the defendant was found guilty of two counts of indecent liberties with a child, but the appellate court reversed the convictions, finding that the State had not sufficiently established an essential element of the offenses, *i.e.*, his age. At trial, the only evidence of the defendant's age was his statement to an investigating officer. No corroborating evidence was offered. *Dalton*, 91 Ill. 2d at 24. The defendant argued that the courts in *Wistrand v. People*, 213 Ill. 72 (1904), and *People v. Rogers*, 415 Ill. 343 (1953), reversed convictions that included age as an element because the only proof of age was the defendants' out-of-court statements, violating the *corpus delicti* rule.

¶ 28    Modifying the holdings in *Wistrand* and *Rogers*, the court in *Dalton* changed the rule "as it holds that age is subject to the corroboration requirement" to allow the jury's observation of the defendant to provide sufficient independent corroboration of his age. *Dalton*, 91 Ill. 2d at 29. We noted that the rationale behind the historical mistrust of extrajudicial confessions underlying the corroboration rule would not "be served by applying it in [those] circumstances," because the element of age was "not subject to the same infirmities when admitted to by a defendant as are more subjective admissions." *Dalton*, 91 Ill. 2d at 29. A defendant's statement about his age "appears to be inherently more reliable *** because it is a statement of an immutable characteristic." *Dalton*, 91 Ill. 2d at 30. Thus, we concluded that the defendant's statement of his age was admissible without corroboration. *Dalton*, 91 Ill. 2d at 30.

¶ 29    Here, defendant cites *Dalton* to argue that, because the element of penetration does not involve an immutable characteristic, the State was required to present independent evidence of that element before the jury could properly conclude the State had met its burden of proof on that element. In the absence of that corroboration, defendant asserts the appellate court properly reversed his PCSA convictions.

¶ 30    We are not persuaded by defendant's interpretation of *Dalton* and do not find it dispositive in this case. The holding in that case was narrowly tailored to decide the precise issue before the court, namely, the need to corroborate the immutable characteristic of age. Thus, the rationale in *Dalton* is applicable when an immutable characteristic is both an essential element of an offense and evinced only by the defendant's out-of-court statements. *Dalton*'s holding was designed to modify the *Wistrand* and *Rogers* rule *only* to the extent that the rule required corroboration of elements that were also immutable characteristics. *Dalton*, 91 Ill. 2d at 30. *Dalton* offers no guidance in applying the *corpus delicti* rule in the instant case that does not involve immutable personal characteristics. Contrary to defendant's assertion, *Dalton* should not be construed as implicitly requiring full corroboration of all other elements as well. *Dalton*'s holding that the element of age need not be independently corroborated, however, supports the general proposition that the *corpus delicti* rule does not universally mandate corroboration of every element of every charged offense.

¶ 31    For additional assistance, we next look to other Illinois decisions to determine whether the *corpus delicti* of PCSA may be established when the only evidence of penetration comes from the defendant's statement. We note that this court's explanation of the rule in *People v. Perfecto*, 26 Ill. 2d 228 (1962), was approved in *People v. Willingham*, 89 Ill. 2d 352, 359 (1982), as the "most precise explanation" of the criteria for establishing the *corpus delicti*.

In *Perfecto*, we found "an abundance of evidence corroborating" the defendant's confession that he had beaten a 75-year-old woman after she resisted his attack and then sexually assaulted her. In the absence of supporting testimony from the victim, this court cited numerous sources of independent evidence to support the *corpus delicti* of the forcible rape charge. We cited the testimony of an eyewitness that the lights in the woman's room had gone on and off, the door had shaken, and the defendant had come out shortly afterward with scratches on his left shoulder and a bite mark on his right shoulder. In addition, a red smear was found on the wall, papers were scattered on the floor, and the victim was bleeding, badly bruised, and had sustained a broken collarbone. *Perfecto*, 26 Ill. 2d at 229-30. Without mentioning any *direct* corroborating evidence of penetration, we upheld the defendant's forcible rape conviction, stating that "[t]he evidence here, taken as a whole, leaves no doubt that a rape was committed and that defendant committed it." *Perfecto*, 26 Ill. 2d at 230.

¶ 32   As this court explained, the *corpus delicti* rule does not require that the independent evidence be "other than that which *tends to connect* the defendant with the crime." (Emphasis added.) *Perfecto*, 26 Ill. 2d at 229. The corroborating evidence also need not provide proof beyond a reasonable doubt. "The true rule is that if there is evidence of corroborating circumstances which *tend to prove the corpus delicti* and *correspond with the circumstances related in the confession*, both *** may be considered in determining whether the *corpus delicti* is sufficiently proved in a given case." (Emphases added.) (Internal quotation marks omitted.) *Perfecto*, 26 Ill. 2d at 229. The specific language describing the critical relationship between the corroboration and the details of the confession was expansive, requiring only a loose tendency to "connect" the two and a mere "correspond[ence] with the circumstances" noted in the confession (*Perfecto*, 26 Ill. 2d at 229).

¶ 33   Similarly, in *People v. Bounds*, 171 Ill. 2d 1 (1995), this court affirmed the defendant's sexual assault conviction *in the absence of direct evidence of penetration* by approving an inferential connection between the State's evidence and the defendant's confession. The defendant confessed to killing the victim after kidnapping and sexually assaulting her. We determined that "[w]hile not conclusive proof that an act of penetration occurred, the undressed condition of the body tended to show that the victim was sexually assaulted and corroborated the defendant's description of the attack," ultimately holding that the State's independent evidence was sufficient to support a criminal sexual assault conviction. *Bounds*, 171 Ill. 2d at 44. In reaching our holding, we relied on the availability of inferences from the surrounding circumstances that could corroborate the confession on the element of penetration. *Bounds*, therefore, further suggests that direct corroboration of the element of penetration is not necessary under the *corpus delicti* rule.

¶ 34   Our appellate court has reached the same conclusion in a case where the victim could not recall the underlying sexual assault. In *People v. Stevens*, 188 Ill. App. 3d 865 (1989), the appellate court reviewed whether the element of penetration was sufficiently corroborated to sustain the defendant's convictions for criminal sexual assault and aggravated criminal sexual assault. *Stevens*, 188 Ill. App. 3d at 878-79. In his tape-recorded confession, the defendant admitted that, when his key would not work in the lock, he broke into a house he thought was his and had sex with a woman he thought was his wife. *Stevens*, 188 Ill. App.

3d at 872. The court considered whether the element of penetration was sufficiently corroborated by independent evidence to comport with the *corpus delicti* rule. No evidence directly corroborated the defendant's admission.

¶ 35    The defendant in *Stevens* attempted to distinguish *Perfecto*, arguing that there significant eyewitness testimony supported the defendant's confession, as did the injuries the victim suffered in fending off his attack. *Stevens*, 188 Ill. App. 3d at 880. In *Stevens*, the State's only physical evidence was the victim's torn clothing, and the court in *People v. Kokoraleis*, 149 Ill. App. 3d 1000, 1028-29 (1986), had previously found that, by itself, torn clothing was insufficient to support a rape conviction. *Stevens*, 188 Ill. App. 3d at 880.

¶ 36    Nonetheless, after noting the distinction between merely requiring some evidence "tending to show the crime actually occurred" and establishing proof beyond a reasonable doubt, the appellate court examined the State's evidence as a whole. *Stevens*, 188 Ill. App. 3d at 877-78. The evidence showed that the 64-year-old victim was heavily sedated at the time of the assault because she had taken two sleeping pills before going to bed. Nonetheless, she initially screamed after feeling someone grab her chest area, later woke up with torn clothing, and subsequently stated to both her daughter and the emergency room physician that she had been raped. She did not, however, actually recall any sexual contact or penetration. *Stevens*, 188 Ill. App. 3d at 870. Even *in the absence of any victim testimony or supporting physical evidence of penetration*, the court concluded that, taken as a whole, the State's proof sufficiently "tend[ed] to establish" the element of penetration to uphold the convictions. *Stevens*, 188 Ill. App. 3d at 880-81. Thus, the court affirmed the defendant's criminal sexual assault and aggravated criminal sexual assault convictions because the necessary elements of force and penetration could be inferred from the totality of the surrounding circumstances even when the victim had no specific memory of the assault.

¶ 37    This court further considered the meaning of corroboration in the absence of physical evidence and victim testimony in *People v. Cloutier*, 156 Ill. 2d 483 (1993). In his confession, the defendant admitted the element of penetration but alleged consent. At trial, he noted the absence of any physical evidence and argued the State did not satisfy the *corpus delicti* rule because the deceased victim could not testify and no other independent evidence of the statutory elements of penetration and the use or threat of force was offered.

¶ 38    This court explained that "[t]he particular circumstances must be considered, and *every detail need not correspond*." (Emphasis added.) *Cloutier*, 156 Ill. 2d at 503 (citing *People v. Furby*, 138 Ill. 2d 434, 450-51 (1990)). We then considered the circumstantial evidence and testimony from other women defendant had threatened with force while attempting to assault them in the hours after killing the victim. We concluded that the independent evidence "overwhelmingly supported" the conclusion that the sexual conduct with the victim had occurred through the threat or use of force. *Cloutier*, 156 Ill. 2d at 505, 506.

¶ 39    After carefully reviewing these decisions, we conclude that none of them required clear independent proof of each element, or indeed of any particular element, of the charged offense to satisfy the *corpus delicti* rule. In fact, *despite the absence of any physical evidence or victim testimony*, the court in all four instances found sufficient corroboration to permit an inference of sexual assault or penetration and thereby satisfy the *corpus delicti* rule,

upholding the defendants' convictions.

¶ 40     We also find our decision in *Furby*, 138 Ill. 2d 434, relying on *Cloutier*, particularly instructive. In *Furby*, the appellate court reversed the defendants' felony convictions for theft of property exceeding $300 from a restaurant where they worked even though the money was never recovered. The appellate majority believed that, although the independent evidence "may have indicated the occurrence of criminal activity of some sort, [it] did not tend to show the commission of the offense charged and did not corroborate the facts related in the defendants' confessions." *Furby*, 138 Ill. 2d at 445. To support its conclusion, the appellate court cited the lack of certainty over the amount of money left in the restaurant, the possibility that someone may have legitimately removed the cash, and the absence of any evidence the defendants had ever possessed the stolen money. *Furby*, 138 Ill. 2d at 445.

¶ 41     In reversing the appellate court judgment and reinstating the convictions, this court emphasized that the independent evidence need only "tend[ ] to show the commission of the offense and [be] corroborative of the circumstances related in the statement." *Furby*, 138 Ill. 2d at 446. The independent evidence need not disprove the possibility that no theft had occurred and that the money had been legitimately removed by someone else. *Furby*, 138 Ill. 2d at 450-51. Evidence of a broken padlock on the drawer that had contained the money, a missing payroll book, pry marks on the rear door of the building, and papers scattered around the office all "tended to show that a theft occurred." *Furby*, 138 Ill. 2d at 451. "The time of the occurrence, the disappearance of the money, and the condition of the premises *corroborated a number of circumstances related in [a defendant's] confession*." (Emphasis added.) *Furby*, 138 Ill. 2d at 452. Thus, the independent evidence tended to prove, generally, that the offense occurred, allowing the defendants' confessions to be considered along with the corroborating evidence to determine if the State had proven the *corpus delicti* of the offense. *Furby*, 138 Ill. 2d at 453.

¶ 42     We consolidated that determination with our review of the defendants' challenge to the sufficiency of the evidence. *Furby*, 138 Ill. 2d at 453. Before concluding that both the *corpus delicti* and the reasonable doubt standards had been met, we examined the appellate record and extensively discussed the jury's exclusive role in determining credibility, weighing the testimony, and drawing reasonable inferences from the evidence. *Furby*, 138 Ill. 2d at 453-56. As we explained,

> "[t]here is *no requirement that the independent evidence and the details of the confession correspond in every particular*. (See, *e.g.*, *People v. Willingham* (1982), 89 Ill. 2d 352, 363 (where sufficient corroboration found despite certain discrepancies between independent evidence and facts related in confession).) *What is necessary are facts or circumstances* ' "*independent of the confession, and consistent therewith, tending to confirm and strengthen the confession.*" ' [Citation.]." (Emphases added.) *Furby*, 138 Ill. 2d at 451-52.

As in our other cases, we did not demand an *exact match* between the independent evidence and the details in the defendant's confession, instead requiring only some "consistency" "tending to confirm and strengthen the confession." (Internal quotation marks omitted.) *Furby*, 138 Ill. 2d at 451-52. This language reiterates the looser connection mandated by the

*corpus delicti* rule also expressed in *Cloutier*, 156 Ill. 2d at 503, and *Perfecto*, 26 Ill. 2d at 229.

¶ 43   Finally, in *Willingham*, the appellate court reversed the defendant's conviction for attempted armed robbery due to a lack of sufficient independent evidence. Again, this court reinstated the conviction, concluding the victim and eyewitness testimony was sufficiently corroborative despite "[a]ny alleged discrepancies between the independent evidence and the circumstances related in the confession" because those differences "did not necessarily create inconsistencies." *Willingham*, 89 Ill. 2d at 363.

¶ 44   After "[a] careful reading of the cases," the court defined sufficient corroboration as "*evidence *** which tends to connect* the defendant with the crime." (Emphasis added.) *Willingham*, 89 Ill. 2d at 358, 359. Citing *Perfecto* as the "most precise explanation" of the criteria for establishing the *corpus delicti*, the court recognized that if independent evidence tends to prove the *corpus delicti* and " '*correspond with the circumstances related in the confession*,' " both may be considered to determine its sufficiency. (Emphasis added.) *Willingham*, 89 Ill. 2d at 359 (quoting *Perfecto*, 26 Ill. 2d at 229). Once again, this court declined to require exact conformity between the details in the defendant's confession and the independent evidence, mandating only a looser "correspondence" between the two.

¶ 45   In sum, our case law has consistently required far less independent evidence to corroborate a defendant's confession under the *corpus delicti* rule than to show guilt beyond a reasonable doubt. *Sargent*, 239 Ill. 2d at 183; *Bounds*, 171 Ill. 2d at 42-43; *Cloutier*, 156 Ill. 2d at 503; *Furby*, 138 Ill. 2d at 446; *Dalton*, 91 Ill. 2d at 28; *Willingham*, 89 Ill. 2d at 359; *Perfecto*, 26 Ill. 2d at 229. See also *Stevens*, 188 Ill. App. 3d at 877-78. Viewed together, these precedents also establish that corroboration is sufficient to satisfy the *corpus delicti* rule if the evidence, or reasonable inferences based on it, tends to support the commission of a crime that is at least closely related to the charged offense. Even if a defendant's confession involves an element of the charged offense, the independent evidence need not affirmatively verify those circumstances; rather, the evidence must simply "correspond" with the confession. *Willingham*, 89 Ill. 2d at 359 (quoting *Perfecto*, 26 Ill. 2d at 229). Corroboration of only some of the circumstances related in a defendant's confession is sufficient. *Furby*, 138 Ill. 2d at 451-52. This interpretation of the *corpus delicti* rule is consistent with our prior application of the rule and clarifies the existing case law.

¶ 46   Moreover, our interpretation is consistent with the interaction between the roles of the *corpus delicti* and the fact finder in a criminal case. The *corpus delicti* is merely the commission of a crime, and an evidentiary showing lower than reasonable doubt is warranted before the fact finder may use the defendant's confession and the other supporting evidence to render a guilty verdict. *Sargent*, 239 Ill. 2d at 183. Under our system of criminal justice, the trier of fact alone is entrusted with the duties of examining the evidence and subsequently determining whether the State has met its burden of proving the elements of the charged offense beyond a reasonable doubt. Once the case is in the hands of the fact finder, its role is to evaluate the credibility of the witnesses, weigh the conflicting evidence, draw reasonable inferences, resolve evidentiary conflicts to determine the facts, and, finally, to apply the law as instructed to arrive at a verdict. See *People v. Washington*, 2012 IL 110283, ¶ 60; *Sargent*, 239 Ill. 2d at 191. Inherent in those responsibilities is the need to consider a

variety of evidence, some conflicting or unclear, addressing the *corpus delicti*, the identity of the offender, or both.

¶ 47　　The primary purpose of the *corpus delicti* rule is to ensure the confession is not rendered unreliable due to either improper coercion of the defendant or the presence of some psychological factor. *Sargent*, 239 Ill. 2d at 183; *Dalton*, 138 Ill. 2d at 447. Unless a confession cannot be sufficiently corroborated to fulfill this purpose, it remains one stick in the evidentiary bundle the trier of fact may use in deciding whether the State has met its burden of proving beyond a reasonable doubt that the defendant committed the charged offenses. Setting the bar too high for finding sufficient corroboration of a defendant's confession under the *corpus delicti* rule would intrude on the scope of the fact finder's exclusive duties. As long as the confession is reasonably reliable, consideration of it and all the other evidence properly admitted at trial falls within the domain of the trier of fact.

¶ 48　　We decline to adopt defendant's suggestion that the factual allegations of this case should guide our determination of the proper scope of the *corpus delicti* rule. Specifically, he points to his allegations about his mental state at the time of his confession, arguing that he was confused after suffering an epileptic seizure. Defendant contends those facts bring this case within the historical rationale underlying the rule. While we remain mindful of that rationale, defendant's reliance on factual matters in determining the proper interpretation of the *corpus delicti* rule is misplaced. Indeed, his emphasis on his mental state at the time of his confession overlooks the fundamental nature of our present inquiry. We are addressing the legal question of whether all elements, or all unique elements, of a charged offense must be supported by independent evidence before a defendant's inculpatory statement may be used to establish the *corpus delicti* of the offense. It is axiomatic that the resolution of a purely legal question cannot depend on the specific factual assertions raised. See *Schweigert v. Schweigert*, 201 Ill. 2d 42, 43 (2002) ("Because the question that we address *** is purely a question of law, it is not necessary to recount the factual allegations made by the parties."). The contours of the *corpus delicti* rule cannot vary with the specific factual circumstances alleged by a particular defendant, although the application of the rule may, of course, vary with the facts of each case.

¶ 49　　While the trial court must rule on any legal questions on the evidence, it must not infringe on the jury's role as the finder of fact. *Maple v. Gustafson*, 151 Ill. 2d 445, 452 (1992); *Spidle v. Steward*, 79 Ill. 2d 1, 10 (1980). If the court unduly limits the evidence available, it seriously undermines the fact finder's ability to perform its role in deciding credibility issues, weighing the evidence and drawing reasonable inferences, and resolving evidentiary conflicts. That limitation, in turn, impairs the fact finder's ability to dispose of the case properly.

¶ 50　　By not requiring corroboration of every element, or any one particular element, our interpretation of the *corpus delicti* rule supports the fact finder's role. Simultaneously, it permits the trial court to perform its proper function of ensuring the legal sufficiency of the corroborating evidence presented by the State because the corroboration must still "tend[ ] to connect the defendant with the crime" (*Perfecto*, 26 Ill. 2d at 229). Defendant's reading of the rule would bar the use of a confession if the details relating to the elements of the offense did not completely align with the confession, contradicting our determination in

*Furby* that "every detail need not correspond." *Cloutier*, 156 Ill. 2d at 503 (citing *Furby*, 138 Ill. 2d at 450-51). Consequently, we reject any interpretation that would partially usurp the fact finder's exclusive responsibilities to evaluate the credibility of the witnesses, weigh the conflicting evidence, and draw appropriate inferences from the evidence.

¶ 51    Accordingly, consistent with our precedents, we hold that the *corpus delicti* rule requires only that the corroborating evidence correspond with the circumstances recited in the confession and tend to connect the defendant with the crime. The independent evidence need not precisely align with the details of the confession on each element of the charged offense, or indeed to any particular element of the charged offense.

¶ 52                          B. Application of the *Corpus Delicti* Rule

¶ 53    Next, we turn to the application of the *corpus delicti* rule in this case. The proper question is whether the State's independent evidence adequately corroborated defendant's written statement to permit the jury to consider both in deciding if the State met its burden of proof in establishing the *corpus delicti* of PCSA. See *Sargent*, 239 Ill. 2d at 183 (explaining that the *corpus delicti* is one of two propositions that must be proven beyond a reasonable doubt to obtain a conviction).

¶ 54    Defendant does not dispute that the State's independent evidence corroborates his confession on every element of PCSA except penetration. As applied in this case, that element is statutorily defined as "any intrusion, however slight, of any part of the body of one person *** into the sex organ *** of another person." 720 ILCS 5/12-12(f) (West 2004).

¶ 55    Our review of the record confirms that the events detailed in defendant's confession, J.O.'s interview, and her later trial testimony were virtually identical. Defendant confessed to touching J.O.'s vagina and penetrating it with the tip of his finger on two separate occasions, a few days apart, in January 2005. He stated that "each time his finger touched her for no more than 15 seconds." While it is unclear whether that estimate represented the entire duration of each incident, it is undisputed that both assaults lasted mere seconds.

¶ 56    Consistent with defendant's confession, eight-year-old J.O. confirmed in an interview conducted shortly after the incidents that on two separate occasions a few days apart defendant touched her "private part." She stated she felt defendant's hand on the outside of her private part, but she was never questioned to clarify this response. Although defendant contends that J.O.'s statement contradicts his confession, when viewed in light of our precedents, her statement does not affirmatively deny penetration.

¶ 57    Here, the accounts given by J.O. and defendant were virtually identical. Both described two nighttime assaults that occurred in defendant's residence within a few days of each other while J.O. was sleeping on the floor beside his bed and the rest of the household was asleep. Furthermore, both defendant and J.O. noted that J.O. was sleeping when the first incident began, awakening only at the end of an assault that lasted seconds, and that she quickly went back to sleep after the second incident. Defendant even indicated that J.O.'s movements immediately after the second incident "could have been [her] moving in her sleep as she does sometimes," consistent with her interview statements that the second incident occurred when she was going to sleep after returning from the bathroom and that she "pushed his hand

-13-

away" and went back to sleep.

¶ 58 Defendant claims that this case is similar to *Sargent*, where the court reversed the defendant's two convictions for aggravated criminal sexual abuse for lack of sufficient evidence to corroborate his confession to multiple assaults. The facts in *Sargent*, however, are readily distinguishable.

¶ 59 In *Sargent*, the State attempted to use evidence that supported a charge of digital penetration to corroborate separate counts alleging fondling. This court rejected that argument because the types of conduct involved in fondling and digital penetration charges are significantly different and affect different body parts, thus requiring corroborating evidence specifically related to each charge. See also *People v. Richmond*, 341 Ill. App. 3d 39, 46 (2003) (requiring corroboration where the two criminal counts each alleged contact with separate parts of the victim's body). Here, the PCSA counts both allege the same type of contact, and the corroborating evidence established a high degree of similarity between the two incidents, with both involving the same victim, part of the body, circumstances, location, and time. The State did not simply attempt to generalize evidence of one type of sexual assault to establish an entirely different type of assault allegation, as it did in *Sargent*. The allegations in the two PCSA counts filed against defendant involve "circumstances where criminal activity of one type is so closely related to criminal activity of another type that corroboration of one may suffice to corroborate the other." *Sargent*, 239 Ill. 2d at 185.

¶ 60 Moreover, as defendant acknowledges in his discussion of *Bounds*, some victims possess "inherent limitations on the ability *** to corroborate an act of penetration." Although the victim in *Bounds* was unable to provide verbal corroboration because she was killed by the defendant, here, the eight-year-old victim also possessed limited ability to corroborate defendant's precise actions due to her young age and the lack of detailed anatomical knowledge and terminology typically associated with that youth.

¶ 61 As *Cloutier* noted, in each case "[t]he particular circumstances must be considered, and every detail need not correspond." *Cloutier*, 156 Ill. 2d at 503 (citing *Furby*, 138 Ill. 2d at 450-51). Similarly, we conclude that the "alleged discrepancies between the independent evidence and the circumstances related in the confession" do not "necessarily create inconsistencies" in this case. *Willingham*, 89 Ill. 2d at 363. The record in this case shows that J.O. testified, consistent with her prior interview statements, to two incidents a few days apart, corroborating the defendant's confession that he assaulted her two separate times. Moreover, her description of the incidents was virtually identical to defendant's description. Thus, J.O.'s interview statements and trial testimony both corroborate "a number of circumstances related in" the confession. *Furby*, 138 Ill. 2d at 452. Both also "tend[ ] to connect the defendant with the crime" and " 'tend to prove the *corpus delicti* and correspond with the circumstances related in the confession.' " *Willingham*, 89 Ill. 2d at 359 (quoting *Perfecto*, 26 Ill. 2d at 229). Consonant with this court's precedents declining to demand exact conformity between a defendant's confession and the corroborating independent evidence, we conclude that J.O.'s statements were sufficiently consistent with defendant's confession to satisfy the corroboration rule.

¶ 62 The purpose of the *corpus delicti* rule supports this outcome as well. The rule was

intended to preclude the use of unreliable confessions derived from coercion or certain individuals' tendency to confess offenses they did not actually commit. *Sargent*, 239 Ill. 2d at 183. Defendant asserts that the facts surrounding his confession bring it squarely within the rationale underlying the rule. He specifically cites the mental confusion he allegedly suffered after having an epileptic seizure while in custody, arguing that his mental state affected the reliability of his confession. After hearing substantial evidence and argument on that claim before trial, the trial court denied defendant's motion to suppress his confession on that ground. Defendant did not appeal from that order, and we will not *sua sponte* review the trial court's factual findings or pretrial refusal to suppress defendant's confession. We note that defendant renewed this argument at trial and that the jury heard extensive conflicting testimony on defendant's mental state at the time of his confession.

¶ 63    The record, however, reveals a close correspondence on virtually every detail of both incidents described by J.O. and defendant, indicating that the confession was not fabricated out of whole cloth. Defendant's mental state and any discrepancies in the details described by J.O. and defendant constitute disputed facts to be resolved by the fact finder, who has exclusive responsibility for determining the credibility of the witnesses, evaluating conflicts in the evidence, and drawing reasonable inferences from that evidence. *People v. Washington*, 2012 IL 110283, ¶ 60. The jury was free to conclude that the State had not sufficiently proven the element of penetration to support the two PCSA charges beyond a reasonable doubt, but instead it reached the opposite conclusion. Thus, the appellate court erred by reversing defendant's convictions for PCSA.

¶ 64                                      III. CONCLUSION

¶ 65    For the reasons stated, we conclude that the State need not present independent evidence corroborating every element of the charged offense before a defendant's statement may be used to prove the *corpus delicti*. Here, the independent evidence was sufficient to permit defendant's confession to be presented at trial. Accordingly, we reverse the appellate court's judgment and reinstate defendant's conviction and sentence.

¶ 66    Because of the appellate court's disposition of the appeal, however, it never reached two issues defendant previously raised, challenging: (1) the denial of his request for an instruction on the lesser-included offense of ACSA; and (2) if an instruction on ACSA was not required, his combined 18-year sentence for the two PCSA convictions as excessive. Therefore, we remand the cause to the appellate court for consideration of those issues.

¶ 67    Appellate court judgment reversed.

¶ 68    Cause remanded with directions.

¶ 69    JUSTICE THOMAS, specially concurring:

¶ 70    When this case first came before the court, and I saw that a panel of the appellate court had ruled that a defendant's confession that he penetrated a minor's vagina as far as his fingernail was not sufficiently corroborated by the victim's testimony that the defendant

touched her vagina, I feared that this court's *corpus delicti* jurisprudence had gotten off track somewhere. I suspected that *People v. Sargent*, 239 Ill. 2d 166 (2010), might have been where the court went astray. Chief Justice Kilbride's discussion of the *corpus delicti* rule in the present case is so thorough, persuasive, and well-written that he has convinced me beyond all doubt that *Sargent* was incorrectly decided. Unfortunately, however, the court has decided to leave *Sargent* intact. I can certainly appreciate the court's reluctance to overrule a unanimous decision that is only two years old, but I believe that we have effectively done so anyway. All that is left is to acknowledge it. It will be very difficult for the appellate court to apply this case and *Sargent*, and therefore the best course is to simply admit that *Sargent* was decided incorrectly. I acknowledge that I voted for *Sargent*, but I would rather admit a mistake than continue to perpetuate an unjust rule that does not further the purposes of the *corpus delicti* rule and serves only to allow defendants to escape justice for crimes they unquestionably committed. I now fully endorse and adopt as my own the appellate court's analysis in *Sargent*. See *People v. Sargent*, 389 Ill. App. 3d 904, 909-16 (2009).

¶ 71 The majority opinion persuasively shows that our pre-*Sargent* case law should have mandated the opposite result in *Sargent* and allowed corroboration of one act of sexual assault to corroborate others against the same victim. Indeed, as I will discuss later, other states have held that when there are multiple acts of sexual assault against a single victim, corroboration of one act can suffice to corroborate all acts to which the defendant confesses. Such a rule makes perfect sense and is in keeping with the purpose of the *corpus delicti* rule. If we are going to further, rather than frustrate, the purposes of the *corpus delicti* rule, *Sargent* must be overruled.

¶ 72 *Sargent* set forth the general *corpus delicti* principles correctly. The problem was in how it applied that law to the facts before the court. Let me briefly review a few *corpus delicti* corroboration principles before considering how *Sargent* applied them. First, the corroborating evidence may be circumstantial. *Supra* ¶ 31; *Bounds*, 171 Ill. 2d at 44; *Cloutier*, 156 Ill. 2d at 504; *Furby*, 138 Ill. 2d at 451; *People v. Underhill*, 38 Ill. 2d 245, 253-54 (1967); *Perfecto*, 26 Ill. 2d at 230. Second, the corroborating evidence does not need to provide proof beyond a reasonable doubt. *Supra* ¶ 32; *Perfecto*, 26 Ill. 2d at 229. Third, a specific act of sexual abuse or assault may be inferred from the totality of the surrounding circumstances. *Supra* ¶ 36; *Stevens*, 188 Ill. App. 3d at 880-81. Fourth, both this court and the appellate court have found sufficient corroboration of an act of sexual assault or penetration in the absence of any physical evidence or victim testimony. *Supra* ¶ 39. Fifth, there does not need to be an exact match between the independent evidence and the details in the defendant's confession. Rather, there only needs to be some consistency tending to confirm and strengthen the confession. *Supra* ¶ 42; *Furby*, 138 Ill. 2d at 451-52. And finally:

> "[C]orroboration is sufficient to satisfy the *corpus delicti* rule if the evidence, or reasonable inferences based on it, *tends to support the commission of a crime that is at least closely related to the charged offense*. Even if a defendant's confession involves an element of the charged offense, the independent evidence need not affirmatively verify those circumstances; rather, the evidence must simply 'correspond' with the confession." (Emphasis added.) *Supra* ¶ 45 (citing *Willingham*, 89 Ill. 2d at 359).

¶ 73    As the majority opinion explains, this court and the appellate court have specifically held that acts of sexual penetration could be corroborated by such things as scattered papers on the floor, the victim being injured, and the defendant having bite marks and scratches on him (*Perfecto*); the undressed condition of the victim's body (*Bounds*); a woman waking up with torn clothing believing that she had been raped (*Stevens*); and the victim being found nude, a used tampon being recovered, and the defendant attempting to sexually assault other women at around the same time (*Cloutier*). If all of the above things can corroborate an act of sexual assault, then why cannot a different act of sexual assault against the same victim corroborate an act of sexual assault? Surely, direct proof that the defendant was *actually sexually assaulting* the victim is better corroboration than any of the things listed above. Why should it be the case that a defendant's attempted sexual assault of *other people* can corroborate a confession to an act of sexual assault but the defendant's commission of other acts of sexual assault against the *same victim* cannot? The unfortunate rule established by *Sargent* is that *the better the State's evidence is, the worse off the State is*.

¶ 74    Here are a few examples of how the *Sargent* principle would operate in other cases to frustrate justice. Consider a case of nursing home abuse, in which one nursing home employee comes into a patient's room to find a different employee crawling naked out of the patient's bed. The patient is unable to communicate. When questioned, the defendant confesses to various acts of sexual assault against the victim. Surely, there would be sufficient corroboration for all of the acts because what other possible reason could the employee have for being naked and in bed with a patient? This would be strong, circumstantial evidence tending to strengthen the defendant's confession. If, however, the State had actual physical evidence corroborating one of the assaults (*e.g.*, semen in the victim's vagina), *Sargent* would mandate that the defendant could be convicted only of that specific assault. Does this make any sense? If a defendant is found naked with the helpless victim, he could be convicted of every assault to which he confessed, but if the evidence is that he was naked *and sexually assaulting* the victim, he can be convicted only of that specific act of assault. Again, the better the State's evidence is, the worse off the State is.

¶ 75    Or, consider a date rape drug case in which the victim, like the victim in *Stevens*, wakes up feeling like she has been raped, and the defendant had been seen both with her in a bar and leaving her bedroom the night before. When questioned, defendant confesses to slipping the victim a date rape drug and assaulting her vaginally, anally, and orally. The law would allow him to be convicted of all three assaults. But, if there was actual physical evidence establishing one of the types of assault, *Sargent* would say that he could be convicted of that assault only. It is not difficult to think of other instances in which *Sargent* could lead to unjust results: a developmentally disabled victim, a helpless victim, a victim who is beaten into unconsciousness, a victim who is murdered. There are many scenarios in which there may not be direct evidence corroborating a specific act of assault, but there is strong circumstantial evidence that an assault took place.

¶ 76    We do not, however, need to use our imaginations to see the problems that *Sargent* is causing. In addition to the present case, the appellate court recently decided *People v. Carnalla-Ruiz*, No. 1-09-2302 (2011) (unpublished order under Supreme Court Rule 23), a case with particularly horrific facts. In that case, the defendant was charged with committing

-17-

predatory criminal sexual assault against his handicapped child, who suffered from spina bifida and scoliosis and was confined to a wheelchair. Her condition left her unable to urinate, and she had to be catheterized every four hours. *Id.* at 4. The victim testified to numerous instances in which her father tried to insert his penis into her vagina and also licked and kissed her vagina. In one instance, the defendant removed her diaper when she was recovering from surgery for a spinal infection and tried to insert his penis into her vagina. According to the victim, the defendant would also lick her vagina and expose his penis while catheterizing her. *Id.* at 5-7. The defendant gave a full confession, in which he explained that he would get so aroused while catheterizing his daughter that he masturbated and ejaculated in front of her. He would also kiss and lick her vagina and thrust his tongue in and out of her. On other occasions, he placed his penis inside her vagina and held it against the outside of her vagina. *Id.* at 12-13. Because of the child's disability, she could not feel what the defendant was doing when he placed his mouth on her vagina, but she knew that he was placing his mouth on her vagina because she could see him in the closet mirror. *Id.* at 5-6.

¶ 77    Relying on *Sargent*, the appellate court unanimously reversed the defendant's conviction on the count that alleged that he had penetrated the minor's vagina with his tongue. Because the minor's disability left her unable to feel what was happening, there was no direct evidence to corroborate defendant's confession that he had penetrated her with his tongue. The appellate court acknowledged that there was clear, undisputed evidence placing the defendant's mouth directly on the victim's vagina, but held that this was not sufficient under *Sargent* because it was the basis for a different charge. *Id.* at 20-23. The court concluded that *Sargent* would not allow mouth-vagina contact to corroborate tongue-vagina intrusion and explained that, "it cannot be assumed that because defendant's mouth was in D.R.'s vaginal area, that his tongue necessarily intruded into her vagina." *Id.* at 22. I am not prepared to wait for any more cases like *Carnalla-Ruiz* before voting to overrule *Sargent*.

¶ 78    Where, then, did *Sargent* go wrong? I can pinpoint the exact place. As I said before, *Sargent* set forth the general *corpus delicti* principles correctly. However, it got off track when it applied them to the facts before the court. When considering whether evidence that the defendant had placed his finger in the child's anus could corroborate his confession to fondling the child's penis, the court relied on *Bounds* for the rule that, "where a defendant confesses to multiple offenses, the corroboration rule requires that there be independent evidence tending to show that defendant committed each of the offenses for which he was convicted." *Sargent*, 239 Ill. 2d at 185 (citing *Bounds*, 171 Ill. 2d at 42-46). However, this is how the court applied that rule to the facts before it:

> "The State contends that evidence of defendant's penetration of M.G.'s anus with his finger and of J.W.'s anus with his penis provides sufficient corroboration that defendant also fondled M.G.'s penis. *We note, however, that these were separate acts which gave rise to separate charges*. Our precedent demonstrates that under the corroboration rule, the independent corroborating evidence must relate to the specific events on which the prosecution is predicated." (Emphasis added.) *Id.* at 184-85.

¶ 79    It is now evident to me that where the court went wrong in *Sargent* was in expanding the *Bounds* rule from "both crimes must be corroborated" to "the same act cannot corroborate

multiple crimes." These are very different propositions. There is nothing in *Bounds* that required the result in *Sargent*. In *Bounds*, the defendant was charged with both aggravated criminal sexual assault and aggravated kidnapping, and the defendant raised a *corpus delicti* corroboration challenge to both convictions. The court reviewed the evidence and determined that defendant's confession to each was adequately corroborated. *Bounds*, 171 Ill. 2d at 42-46. That is it. The court did not even purport to establish a one act, one corroboration rule. Indeed, as the majority opinion demonstrates, *Bounds* actually should have mandated the opposite result in *Sargent*. *Bounds* held that physical evidence is unnecessary to corroborate an act of sexual penetration and that penetration could be inferred from the fact that the victim was found naked and injured. *Bounds*, 171 Ill. 2d at 44. If a victim being found naked can corroborate a specific act of sexual assault, then surely the defendant committing another act of sexual assault against the same victim can be sufficient corroboration. The latter evidence is better than the former because it conclusively establishes that the defendant actually sexually assaulted the victim.

¶ 80    What the court failed to appreciate in *Sargent* was that the evidence that the victim inserted his finger into the victim's anus corroborated *both* defendant's confession to that act and to his fondling of the victim's penis—it just corroborated them *in different ways*. As to defendant's confession to inserting his finger into the child's anus, the independent evidence was *direct* evidence establishing that crime *beyond a reasonable doubt*. As to defendant's confession to fondling the child's penis, it was *circumstantial* evidence *tending* to establish the truth of the defendant's confession. And circumstantial evidence tending to establish that the crime occurred is all that is required. And if this is all that is required, what better circumstantial evidence is there than that the defendant was committing other acts of sexual assault against the same victim? As the appellate court explained in *Sargent*, "evidence of one crime mentioned in a confession can serve as *circumstantial evidence* for a closely related charge." (Emphasis added.) *Sargent*, 389 Ill. App. 3d at 913.

¶ 81    As the majority correctly notes, the reasons for the *corpus delicti* corroboration rule are that: (1) some people, for various psychological reasons, confess to offenses that they did not commit or that did not even occur; and (2) coerced confessions are unreliable. *Supra* ¶ 19 (citing *Sargent*, 239 Ill. 2d at 183). These concerns are not present when a defendant confesses to multiple sexual assaults against a victim, and we have substantial corroboration that one of the acts in fact occurred. In this situation, there is simply no reason to doubt the defendant's confession to all of the acts. Other states have held precisely that, and our pre-*Sargent* case law mandates the same rule for Illinois.

¶ 82    One state that has adopted this rule is California. In *People v. Jones*, 949 P.2d 890 (Cal. 1998), the defendant was charged with kidnapping, robbing, sexually assaulting, and murdering the victim. The two sexual assaults that were alleged were forcible rape and forcible oral copulation. *Id.* at 896. The defendant confessed to kidnapping the victim, forcibly raping her three times, and forcing her to orally copulate him one time. The attack lasted about an hour, after which the defendant shot and killed the victim. *Id.* On appeal, defendant argued that there was no evidence corroborating his confession to the forcible oral copulation charge. Semen was found in the victim's vagina and rectal area, and the state of the victim's body left no doubt that she had been sexually assaulted. *Id.* at 903. There was

no physical evidence, however, to establish that an act of oral copulation had occurred.

¶ 83    The California Supreme Court rejected the defendant's argument. After noting that the purpose of the *corpus delicti* rule is to assure that " 'the accused is not admitting to a crime that never occurred' " (*id.* at 902 (quoting *People v. Jennings*, 807 P.2d 1009, 1030 (Cal. 1991)), the court held that the act of oral copulation was sufficiently corroborated by the *other* acts of sexual assault that the defendant committed against the victim. *Id.* at 903-04. The court then rejected out of hand the defendant's claim that the lack of semen in the victim's mouth was fatal to establishing the *corpus delicti* on that charge. The court relied on cases in which confessions to rape were upheld despite a complete absence of any independent evidence of sexual penetration. The cases the court discussed sound remarkably like the pre-*Sargent* Illinois cases set forth in the majority opinion. In other words, confessions to rape were upheld on the basis of such things as the unclothed condition of the body (*Jennings*), or a decomposed body disposed of in such a way as to suggest a violent attack (*People v. Robbins*, 755 P.2d 355 (Cal. 1998)). *Jones*, 949 P.2d at 903-04. The court explained that it had "never interpreted the *corpus delicti* rule so strictly that independent evidence of every physical act constituting an element of an offense is necessary." *Id.* at 904. Until *Sargent*, neither had this court. The result in *Jones* makes perfect sense. Once we *know* that the defendant sexually assaulted the victim, there is no reason to doubt his confession to any particular act of sexual assault. *Sargent*, however, would have mandated the opposite result in *Jones*.

¶ 84    In an unpublished decision, the California Court of Appeal applied the *Jones* result to a situation in which the victim was alive but denied that the specific act of oral copulation that the defendant confessed to had occurred. *People v. Hernandez*, No. H035229, 2011 WL 982971 (Cal. Ct. App. Mar. 22, 2011). In *Hernandez*, defendant confessed to touching the child's vagina and kissing her vagina and breasts. The victim testified that defendant touched her vagina and kissed her breasts, but denied that he had put his mouth on her vagina. *Id.* at *1. The court, relying on *Jones*, *Robbins*, and *Jennings*, held that the defendant's confession to that act was sufficiently corroborated. The court acknowledged that the situation was different because *Jones*, *Robbins*, and *Jennings* involved victims who were deceased rather than a live victim who denied that the particular act occurred. *Id.* at *4. The court pointed out that the victim did testify to other sex acts that defendant had committed against her, and noted that the trial judge had found it understandable that a child would be uncomfortable discussing sexual matters in open court. *Id.* The court then held the following, which I find entirely persuasive:

> "From what the victim did describe in court, *there is no doubt that defendant committed a sex crime on her. The trial court was justified in using defendant's confession to determine the nature of that crime.* Although defendant's words alone established crucial elements of the charged offense, we conclude that there was sufficient independent proof that a sex crime occurred for the trial court to rely on defendant's statements without infringing on the protections afforded by the *corpus delicti* rule." (Emphasis added.) *Id.*

¶ 85    Another state that has followed this rule is Wyoming. In *Simmers v. State*, 943 P.2d 1189 (Wyo. 1997), the defendant confessed to having three minors, A.B., A.J., and S.S., perform

oral sex on him while they attended his mother's day care. On appeal, he argued that his confession was not sufficiently corroborated because there was no independent corroboration for these acts. For instance, there was no independent evidence that A.B. had placed her mouth on the defendant's penis. Here is what the Wyoming Supreme Court held:

> "In the case at bar, Simmers admitted to having all three victims suck his penis while they were attending his mother's day care. At trial AB and AJ testified to sexual contact between themselves and Simmers. Although AB never acknowledged placing her mouth on Simmers' penis, her testimony established that sexual contact occurred with Simmers. That testimony sufficiently corroborated Simmers' confession. AJ also testified that Simmers made him, SS and another child put their mouths on Simmers' penis at the babysitter's house. The social worker testified that SS told her that Simmers made SS suck his penis. Taken as a whole, the evidence in the record established, for purposes of corroboration, the commission of the crimes for which Simmers was convicted." *Id.* at 1199.

In other words, the fact that sexual contact occurred between A.B. and the defendant, and the fact that other children testified to putting their mouths on the defendant's penis, was sufficient corroboration for the defendant's confession that he had A.B. put her mouth on his penis. This entirely sensible conclusion is in keeping with the rule that the corroborating evidence need only be circumstantial and need only tend to corroborate the confession.

¶ 86    I believe that *Sargent* erred in holding that defendant's confession to fondling the victim's penis was not sufficiently corroborated by the independent evidence that he placed his finger in the victim's anus.[1] In keeping with the law set forth above, I believe that once we have independent proof that sexual abuse or assault occurred, the defendant's confession can be used to fill in the details. As the majority clearly explains, corroboration is sufficient if the evidence "tends to support the commission of a crime that is at least closely related to the charged offense," and the evidence does not need to affirmatively verify the circumstances of the confession—it simply needs to "correspond" with the confession. *Supra* ¶ 45. Certainly that standard is met when the defendant confesses to multiple acts of sexual assault and one of them can be affirmatively verified. Again, the purpose of the *corpus delicti* corroboration rule is to ensure that the defendant is not confessing to a crime that never occurred. These concerns disappear entirely once we know that a sexual assault occurred. Once this is established, there is no reason to doubt the defendant's confession. The *corpus*

---

[1]Here, I must state my one minor point of contention with the majority's analysis. The majority states that *Sargent* and *People v. Richmond*, 341 Ill. App. 3d 39 (2003), each involved "vastly different types of contact." *Supra* ¶ 25. In *Sargent*, the two types of contact were fondling a six-year-old boy's penis and inserting a finger into the same six-year-old boy's anus. *Sargent*, 239 Ill. 2d at 170. In *Richmond*, the two types of contact alleged were that the defendant placed his penis in a six-year-old girl's vagina and also placed his penis in the same six-year-old girl's anus. *Richmond*, 341 Ill. App. 3d at 43. I do not believe that, in either case, the two types of contact were "vastly different." Rather, I believe that they are the types of acts that are "so closely related" that "corroboration of one may suffice to corroborate the other." (Internal quotation marks omitted.) *Supra* ¶ 26 (quoting *Sargent*, 239 Ill. 2d at 185).

*delicti* corroboration rule was never intended to be a technicality to make the State prove its case twice or to allow criminal defendants to escape justice for crimes that they clearly committed. This state's pre-*Sargent* case law establishing that corroboration evidence may be circumstantial and need only tend to corroborate the confession should have led *Sargent* to the same conclusion that California and Wyoming have reached. What better circumstantial evidence tending to corroborate the confession could there possibly be than that the defendant committed other acts of sexual assault or abuse against the victim?

¶ 87    I would note that the *corpus delicti* corroboration rule has been the subject of much criticism, and the trend in the law is toward abolishing it altogether. The federal courts have abandoned it in favor of a trustworthiness standard. See *Opper v. United States*, 348 U.S. 84 (1954). Many state courts are moving in the same direction, either expressly adopting the trustworthiness standard or simply looking to the reliability of the confession.[2] As Judge Posner has explained:

> "The [*corpus delicti* corroboration] rule is a vestige of a time when brutal methods were commonly used to extract confessions, sometimes to crimes that had not been committed, see generally Note, *Proof of the Corpus Delicti Aliunde the Defendant's Confession*, 103 U. Pa. L. Rev. 638 (1955), though even in the bad old days confessions had (in principle at least) to be corroborated, see *Langbein, Torture and the Law of Proof* (1977). Never well adapted to its purpose (on which see *id.* at 13-14) of preventing the conviction of a person on the basis of an unreliable confession—since the crime might have occurred yet have been committed by someone other than the defendant—the *corpus delicti* rule no longer exists in the federal system, where the requirement is instead that there must be 'substantial independent evidence which would tend to establish the trustworthiness of the statement.'" *United States v. Kerley*, 838 F.2d 932, 939-40 (7th Cir. 1988) (quoting *Opper v. United States*, 348 U.S. 84, 93 (1954)).

See also 7 John H. Wigmore, Evidence § 2070, at 510 (Chadbourn rev. ed. 1978) (the rule is a "positive obstruction to the course of justice"); Edward W. Cleary, McCormick on Evidence § 145, at 370 (3d ed. 1984) ("There is increasing reason to believe that the corroboration requirement *** may have outlived its usefulness."); Thomas A. Mullen, *Rule Without Reason: Requiring Independent Proof of the Corpus Delicti as a Condition of Admitting an Extrajudicial Confession*, 27 U.S.F. L. Rev. 385, 415 (1993) ("Literal compliance with the *corpus delicti* rule sometimes results in unsuccessful prosecutions of admittedly guilty people, often in circumstances that highlight the absurdity of the rule.").

---

[2]See, *e.g.*, *State v. Cook*, 847 A.2d 530, 548 (N.J. 2004); *State v. Mauchley*, 2003 UT 10, ¶ 61, 67 P.3d 477; *State v. Hafford*, 746 A.2d 150, 172-74 (Conn. 2000); *State v. Hansen*, 1999 MT 253, ¶ 36, 296 Mont. 282, 989 P.2d 338; *Fontenot v. State*, 881 P.2d 69, 77-78 (Okla. Crim. App. 1994); *State v. Parker*, 337 S.E.2d 487, 494-95 (N.C. 1985); *Jacinth v. State*, 593 P.2d 263, 266 (Alaska 1979); *State v. George*, 257 A.2d 19, 21 (N.H. 1969); *Gilder v. State*, 133 S.E.2d 861, 862-63 (Ga. 1963); *Holt v. State*, 117 N.W.2d 626, 633 (Wis. 1963); *State v. Yoshida*, 354 P.2d 986, 990-91 (Haw. 1960); 7 John H. Wigmore, Evidence § 2071, at 511 (Chadbourn rev. ed. 1978) (collecting cases).

I mention this not to call for the abolition of the rule, as that issue has not been raised here,[3] but rather to argue that there is no reason for this court to be *expanding* the rule or turning it into something that it was never intended to be. This is what the court did in *Sargent* by failing to appreciate that the corroborative evidence may be circumstantial and need only tend to corroborate the details of the confession.

¶ 88     For the same reason, I believe that *Sargent* also erred in holding that the defendant could not be convicted of multiple counts of placing his finger in the victim's anus. The defendant had confessed to putting his finger in M.G.'s anus 50 to 70 times. He was charged with three counts of predatory criminal sexual assault based on this conduct. The appellate court rejected the defendant's argument that only one count was sufficiently corroborated. The appellate court held that M.G.'s statement to a DCFS investigator that the defendant "puts" his finger in M.G.'s butt could corroborate all three counts because it implied more than one occurrence. *Sargent*, 389 Ill. App. 3d at 913-14.

¶ 89     This court reached the opposite conclusion. This court cited a grammar and composition handbook for the proposition that verbs do not have number, and then explained that the use of the present indicative verb form does not indicate how many times something occurred. The court acknowledged that the present indicative form may be used to indicate habitual action, but said that imputing such a usage to a six-year-old would be speculative because his understanding of the nuances of the English language may be years away.[4] *Sargent*, 239 Ill. 2d at 186. The problem with this position is that the court both said that the grammar skills of six-year-olds are not sufficiently developed to attribute precise meaning to their words, but then also attributed precise meaning to a six-year-old's use of the present indicative verb form. Regardless, this analysis loses sight of the fact that the corroborative evidence need only be circumstantial and need only tend to establish that an offense occurred. Most parents, if their six-year-old told them that a four-year-old sibling "steals

_____

[3]The State did, however, raise this argument in *Sargent*, but this court summarily dismissed it on the basis that this court had applied the rule for 150 years and that the State had offered "no persuasive reasons" to abandon the rule. I wish now to distance myself from that statement. Saying that a rule has been around for 150 years does not mean that it continues to have validity today. Indeed, one of the principal critiques of the *corpus delicti* corroboration rule is that it has outlived its usefulness in light of other developments related to the law of confessions, such as the voluntariness requirement and the fifth amendment protections set forth in *Miranda*. See Edward W. Cleary, McCormick on Evidence § 145, at 370 (3d ed. 1984). And it is certainly clear that there are persuasive reasons to abandon the rule, which is why the federal courts have unanimously done so and why leading commentators in evidence law have argued for abandonment of the rule. At some point, this court needs to do what other courts have done and weigh the relative merits of the *corpus delicti* corroboration rule and the trustworthiness doctrine and determine which is the better rule to be applying in this century.

[4]It seems problematic that this court acknowledged that the child used the proper word to indicate habitual action, but then discounted his statement on the basis that the child might not have known he was using the word correctly. This would seem to put all juvenile statements and testimony in doubt.

from the cookie jar," would assume that this had happened more than once. I now believe that the appellate court was correct in holding that a *reasonable inference* from M.G.'s statement is that the conduct occurred more than one time. A reasonable inference from the evidence is all that is required for corroboration. *Supra* ¶ 45. *Sargent* seemed to be improperly requiring proof beyond a reasonable doubt from the corroborative evidence. The corroborative evidence established that the defendant placed his finger in M.G.'s anus, and I believe that defendant's confession may properly have been used to determine how many times the act occurred.

¶ 90    In addition to overruling *Sargent*, this court should also overrule the appellate court's decision in *Richmond*. That was the case in which the appellate court held that contact between the defendant's penis and a six-year-old girl's anus could not corroborate the defendant's confession to contacting the same girl's vagina with his penis. *Richmond*, 341 Ill. App. 3d at 45-46. We cited this decision approvingly in *Sargent*, but I now believe that we should have been overruling it for the reasons given by the appellate court in *Sargent*:

> "We think that *Richmond* employed an unduly onerous standard for the independent evidence corroborating the confession. The defendant confessed to a single encounter in which he sexually assaulted the victim both anally and vaginally, and the victim not only confirmed that the encounter occurred and that the defendant assaulted her anally, but she apparently also corroborated several other incidental details of his confession. This independent evidence would seem to meet the corroboration rule's limited requirement that the independent evidence 'tend' to establish *corpus delicti*, even circumstantially. In fact, on the continuum of corroboration cases, this evidence probably places *Richmond* very close to full corroboration. The court in *Richmond* found deviation between the confession and the independent evidence only by very finely parsing both, but the facts of that case leave no reasonable doubt that the incident to which the defendant confessed did actually occur. The corroboration rule requires no more. Especially in cases of closely related crimes, such as sexual abuse or assault cases, the parsing approach used in *Richmond* would almost always lead to reversal or acquittal, unless the victim specifically describes each individual act in what is typically a series of related acts. We therefore elect not to follow *Richmond* and instead adhere to the analysis we laid out above." *Sargent*, 389 Ill. App. 3d at 915-16.

The above is a correct statement of the law, and this court should have affirmed in *Sargent*.

¶ 91    In sum, I would explicitly adopt the rule that California and Wyoming have and that the appellate court did in *Sargent*: when a defendant confesses to multiple acts of sexual assault or abuse against the same victim, all of the acts may be corroborated by independent evidence that a sexual assault occurred. Or, as the California appellate court explained, once it is clear that a sex crime occurred, the defendant's confession can be used to fill in the details. Such a rule is entirely consistent with the policy behind the *corpus delicti* corroboration rule, and, as the majority opinion demonstrates, is the result demanded by this court's pre-*Sargent* case law. Corroborative evidence need only be circumstantial and need only tend to establish the *corpus delicti*. What better circumstantial evidence can there be than that the defendant committed other acts of sexual assault against the victim? *Sargent*

established a rule that, the better the evidence the State has, the fewer convictions the State may obtain. This is not what the *corpus delicti* rule was designed to do. I again acknowledge my vote for the *Sargent* opinion. No one justice of the court is to blame for this mistake. It was a unanimous mistake by the court as a whole, and this court as a whole must now acknowledge the error and correct it. The *corpus delicti* rule is court made, not statutory, and therefore it is up to this court to fix this problem. We should not pass up the opportunity to do so today.