2020 IL App (1st) 181284-U

No. 1-18-1284

Order filed December 3, 2020

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 17 CR 14845 |
| | ) | |
| DOMINGO GONZALEZ, | ) | Honorable |
| | ) | James B. Linn, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE LAMPKIN delivered the judgment of the court.
Presiding Justice Gordon and Justice Reyes concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Defendant's conviction for possession of a controlled substance is affirmed where the evidence established that he had constructive possession of the cocaine found in the apartment, and the *corpus delicti* rule was not violated.

¶ 2    Following a bench trial, defendant Domingo Gonzalez was found guilty of possession of a controlled substance for possessing 5.1 grams of cocaine (720 ILCS 570/402(c) (West 2016)) and possession of 332.1 grams of cannabis (720 ILCS 550/4(d) (West 2016)). The trial court sentenced defendant to two years' first-time offender probation (720 ILCS 570/410 (West 2016)) and

community service for possession of a controlled substance. The court did not impose a sentence for the cannabis offense. On appeal, defendant contends the State failed to prove him guilty beyond a reasonable doubt because it failed to establish that he had constructive possession of the cocaine and cannabis found in the apartment. We affirm.[1]

¶ 3    Defendant was tried on one count each of possession of a controlled substance with intent to deliver between 1 and 15 grams of cocaine, and possession with intent to deliver between 30 and 500 grams of cannabis. At trial, Chicago police officers John Frano, Nicholas Hertko, Kevin Garcia, Ivan Ramos, Marvin Bonnstetter, and Sergeant Salvatore Reina all testified that they were members of the team that executed a search warrant at 6:45 p.m. on August 30, 2017, at an apartment in the 3100 block of North Mason Avenue.

¶ 4    Frano testified that defendant was not present at the residence when the warrant was executed. Defendant's father, also named Domingo Gonzalez, was there. Frano searched the rear bedroom and recovered several documents he referred to as "proofs of residency" that contained the name of the person who was the target of the search warrant. From atop a dresser, Frano recovered a small envelope that contained a birth certificate, a social security card, and a vaccination card. The birth certificate and social security card were in the name "Domingo Marcello Gonzalez." The certificate had a date of birth of March 14, 1994. The vaccination card was in the name "Domingo Gonzalez" and indicated vaccinations beginning in 1994 and after. Frano also recovered large bundles of mail addressed to "Domingo Gonzalez" from inside a drawer of that same dresser. While executing the warrant, Frano did not search through the mail to

---

[1] In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

determine if it belonged to defendant or his father, and later discovered that some of the mail belonged to the father. In court, Frano identified the three documents and three bundles of mail he recovered from the dresser. Inside a walk-in closet off the rear bedroom, Frano recovered a loaded magazine, a loaded "drum magazine," and live rounds of ammunition.

¶ 5 After executing the warrant, Frano spoke with defendant's father, who then made a phone call. About 10 to 15 minutes later, defendant arrived at the scene and was arrested outside the residence. Frano identified defendant in court.

¶ 6 On cross-examination, Frano testified that he asked the father if he knew where defendant was, and the father then called defendant. Some of the mail contained birth dates from which Frano was able to determine if it belonged to defendant or his father. By looking at the birth dates, Frano concluded that the mail addressed to "Domingo Gonzalez, Junior," belonged to defendant's father.

¶ 7 Hertko testified that he recovered two clear knotted baggies containing a chunky white rock-like substance of suspect cocaine from the kitchen floor next to the garbage can. He also recovered an electronic scale from atop a kitchen cabinet. In the rear bedroom, Hertko recovered a box of Winchester .22-caliber rounds.

¶ 8 On cross-examination, Hertko testified that when he entered the residence, an adult man and woman were already detained in the living room. He did not observe that man in the kitchen.

¶ 9 Garcia testified that he recovered 18 small, knotted plastic bags of crack cocaine from inside the kitchen garbage can. On cross-examination, Garcia testified that when he entered the apartment, the adult man "might have been in the kitchen area."

¶ 10 Ramos testified that inside the closet of the rear bedroom, he recovered a black backpack containing a large amount of cannabis inside several heat-sealed bags, and a heat sealer and plastic

bags used for packaging narcotics. In the same closet, he also recovered a metal box containing $7287 in cash. From a dresser drawer in that bedroom Ramos recovered a semi-automatic pistol with an extended magazine loaded with 27 live .22-caliber rounds. Ramos recovered a 2008 high school identification card with defendant's name and photograph from an open shelf on a dresser. Ramos identified defendant in court and noted that he looked much younger in the photograph on the identification card. Ramos and Reina interviewed defendant at the police station. After Reina advised defendant of his *Miranda* rights, defendant stated that the gun belonged to his mother, and the cannabis, crack cocaine, and money were his.

¶ 11     On cross-examination, Ramos acknowledged that the team made a forced entry into the apartment because no one answered the door when they knocked and announced their office. Ramos did not recall seeing an adult man in the kitchen when he entered the apartment. Defendant's statement was not put in writing. Defendant did not tell the officers where the cocaine was located or how much there was. Ramos reiterated that defendant had stated that the narcotics and money recovered in the home were his, and the firearm was his mother's. Ramos did not recall whether defendant used the word "narcotics" or "cannabis and cocaine."

¶ 12     Reina testified that he and Ramos spoke with defendant at the police station. Reina advised defendant of his rights, after which defendant stated that the narcotics recovered from the home were his, the weapon was his mother's, and he "was aware of" approximately $7000 in a black box. Defendant did not use the word "narcotics," but instead, said "Marijuana, weed, and Cocaine."

¶ 13     On cross-examination, Reina testified that he and Ramos asked defendant about the marijuana and cocaine, and defendant admitted they were both his. The officers did not discuss

the specifics about where they found the marijuana with defendant, nor did they ask him where he got the drugs, what he was going to do with them, or if he sold drugs. It was "pretty much assumed" that defendant sold drugs before police obtained the search warrant. Defendant's statement was not put in writing.

¶ 14    Bonnstetter testified that he recovered one plastic bag containing a white chunk substance of suspect cocaine from inside a winter hat in the rear bedroom closet. He also recovered 10 documents that proved residency from a dresser drawer, and a digital scale inside a cabinet in that bedroom. On top of a kitchen cabinet, he found a video camera facing the rear door of the apartment. Officer Napoli[2] called Bonnstetter into the living room where Napoli had recovered a black bag containing four Ziploc bags of suspect cannabis. Bonnstetter photographed and inventoried all the items recovered by all the officers during the search.

¶ 15    The State presented a stipulation that forensic chemist Kathy Regan tested a group of four items containing plant material and found them positive for 111.5 grams of cannabis. Another group of five items of plant material tested positive for 137.3 grams of cannabis, and a group of three items tested positive for 83.3 grams of cannabis. Regan tested 14 of the 18 items recovered from the kitchen garbage can and found them positive for 1.7 grams of cocaine. The two items recovered from the kitchen floor tested positive for 0.2 gram of cocaine, and the one bag of chunky substance recovered from inside the hat tested positive for 3.2 grams of cocaine.

¶ 16    The trial court found the testimony from the police officers "credible and compelling," specifically finding that the testimony about defendant's oral statement indicating his nexus to the contraband was credible. The court pointed out, however, that defendant's statement did not

---

[2] Officer Napoli's first name does not appear in the record.

include anything about the scales or gun. Consequently, the court found defendant guilty of the lesser-included offenses of possession of a controlled substance and possession of cannabis.

¶ 17    The trial court sentenced defendant to two years' first-time offender probation (720 ILCS 570/410 (West 2016)) and community service for possession of a controlled substance. Pursuant to the probation statute, the court deferred judgment, kept the case on its docket, and set a two-year date for defense counsel to return and file a motion to vacate the conviction. The court explained that it was trying to impose a sentence such that if defendant successfully completed probation, he would not have a criminal record. The court did not impose a sentence for possession of cannabis.

¶ 18    On appeal, defendant contends the State failed to prove him guilty beyond a reasonable doubt because it failed to establish that he had constructive possession of the cocaine and cannabis found in the apartment. Defendant argues that, although the search may have implicated his father, it did not prove defendant guilty. Defendant asserts that he was not present during the search, and there was no evidence that he resided or received mail at the apartment. Defendant points out that none of the recovered mail was addressed to the searched residence, but instead, was addressed to a residence on Deming Place, and therefore, the proof of residency did not establish that he had control over the premises or drugs. In addition, defendant contends that his statement to police lacked sufficient independent corroboration to sustain the convictions in violation of the *corpus delicti* rule. Defendant asks this court to reverse both of his convictions.

¶ 19    The State responds that the evidence was sufficient where the majority of the cocaine and marijuana were recovered from the rear bedroom where defendant's documents and mail were found, and defendant admitted to police that the drugs and money were his. The State asserts that

defendant's admission is evidence that he intended to exercise control over the drugs, and that no one else had possession. The State argues that it did not have to show that defendant resided at the apartment, but that he had knowledge of the contraband and control over the location where it was found. The State further argues that the *corpus delicti* was met here where defendant's admission was not the only evidence against him.

¶ 20    Initially, we observe that because the trial court did not sentence defendant for possession of cannabis, no final judgment was entered for that offense. Consequently, this court lacks jurisdiction to consider the trial court's guilty finding for the cannabis offense. *People v. Relerford*, 2017 IL 121094, ¶¶ 71-75. See also *People v. Flores*, 128 Ill. 2d 66, 95 (1989) ("it is axiomatic that there is no final judgment in a criminal case until the imposition of sentence, and, in the absence of a final judgment, an appeal cannot be entertained").

¶ 21    We further observe that we also lack jurisdiction to remand this case for sentencing for possession of cannabis. Generally, the appellate court has no jurisdiction to remand a case for sentencing on unsentenced counts except in certain circumstances, such as when "the circuit court determined, albeit incorrectly, that sentences could not be imposed on the lesser offenses because they merged into the other offenses." *Relerford*, 2017 IL 121094, ¶¶ 73-74 (citing *People v Dixon*, 91 Ill. 2d 316 (1982)). Here, the record shows that the trial court was intent on sentencing defendant to first-time offender probation so that, if successful, he would have no criminal record. We note that defendant was not eligible for first-time offender probation for the cannabis offense due to the amount of cannabis recovered. See 720 ILCS 550/10(a) (West 2016). The court made no mention of the cannabis offense during the sentencing hearing. When, as here, the record is silent as to the reason for the trial court's failure to impose sentence on a particular offense, the exception allowing

remand for sentencing does not apply. *Relerford*, 2017 IL 121094, ¶ 74. We therefore do not have jurisdiction to remand this case for sentencing for possession of cannabis. Accordingly, we only consider defendant's challenge to his conviction for possession of a controlled substance.

¶ 22    When defendant claims that the evidence is insufficient to sustain his conviction, this court must determine whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the elements of the offense proved beyond a reasonable doubt. *People v. Brown*, 2013 IL 114196, ¶ 48 (citing *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979)). This standard applies whether the evidence is direct or circumstantial, and does not allow this court to substitute its judgment for that of the fact finder on issues involving witness credibility and the weight of the evidence. *People v. Jackson*, 232 Ill. 2d 246, 280-81 (2009). Under this standard, all reasonable inferences from the evidence must be allowed in favor of the State. *People v. Lloyd*, 2013 IL 113510, ¶ 42.

¶ 23    In a bench trial, the trial court is responsible for determining the credibility of the witnesses, weighing the evidence, resolving conflicts in the evidence, and drawing reasonable inferences from therein. *People v. Siguenza-Brito*, 235 Ill. 2d 213, 228 (2009). We will not reverse a criminal conviction based upon insufficient evidence unless the evidence is so improbable or unsatisfactory that there is reasonable doubt as to defendant's guilt (*People v. Beauchamp*, 241 Ill. 2d 1, 8 (2011)), nor simply because defendant claims that a witness was not credible or that the evidence was contradictory (*Siguenza-Brito*, 235 Ill. 2d at 228).

¶ 24    To prove defendant guilty of possession of a controlled substance in this case, the State was required to show that he unlawfully and knowingly possessed less than 15 grams of a substance containing cocaine. 720 ILCS 570/402(c) (West 2016).

¶ 25     Possession of contraband may be either actual or constructive. *People v. Givens*, 237 Ill. 2d 311, 335 (2010). Where, as here, defendant is not found in actual physical possession of the contraband, the State must prove that he had constructive possession. *People v. Spencer*, 2012 IL App (1st) 102094, ¶ 17. Constructive possession exists where defendant had knowledge of the presence of the narcotics, and had immediate and exclusive control over the location where the items were found. *People v. Jackson*, 2019 IL App (1st) 161745, ¶ 27. Knowledge may be demonstrated by evidence of defendant's declarations, acts, or conduct from which it can be inferred that he knew the contraband existed in the place where it was found. *Id.* Control is established when defendant has the capability and intent to maintain dominion and control over the contraband, even if he lacks personal present dominion over it. *Spencer*, 2012 IL App (1st) 102094, ¶ 17 (citing *People v. Frieberg*, 147 Ill. 2d 326, 361 (1992)). Proof that defendant had control over the premises where the contraband was found gives rise to an inference of his knowledge and possession of that contraband. *Givens*, 237 Ill. 2d at 335. "The law is clear that the exclusive dominion and control required to establish constructive possession is not diminished by evidence of others' access to the contraband." (Internal quotation marks omitted.) *Id.* at 338.

¶ 26     Constructive possession may be inferred from the evidence by the trier of fact and is often established by entirely circumstantial evidence. *People v. McCarter*, 339 Ill. App. 3d 876, 879 (2003). The fact finder is entitled to rely on reasonable inferences of knowledge and possession, absent other factors that might raise a reasonable doubt of defendant's guilt. *Spencer*, 2012 IL App (1st) 102094, ¶ 17.

¶ 27     Here, viewed in the light most favorable to the State, we find that the evidence was sufficient for the trial court to find that defendant had constructive possession of the cocaine found

in the apartment. The evidence showed that 3.2 grams of cocaine were found inside the rear bedroom where defendant's birth certificate, social security card, vaccination card, high school identification card, and mail were located. Although some of the mail belonged to defendant's father, some of it, including several bank statements, a letter from the Illinois Secretary of State, and a student schedule and bill from Northeastern Illinois University, was addressed to defendant as "Domingo M Gonzalez." In addition to the documents, in the same bedroom closet where the cocaine was found, Ramos recovered a metal box containing $7287 in cash. Defendant admitted to Ramos and Reina that the cocaine and money belonged to him. The trial court found that the testimony from the police officers was "credible and compelling," and specifically, that the testimony about defendant's statement was credible.

¶ 28 The record thus shows that based on the cumulative evidence found in the bedroom and defendant's statement, the trial court was able to find beyond a reasonable doubt that defendant had knowledge of the cocaine and control over the location where it was found. *Jackson*, 2019 IL App (1st) 161745, ¶ 27; *Spencer*, 2012 IL App (1st) 102094, ¶ 17. We therefore find that the record supports the trial court's finding that defendant had constructive possession of the cocaine.

¶ 29 In reaching this conclusion, we find no merit in defendant's argument that his statement to police lacked sufficient independent corroboration to sustain his conviction in violation of the *corpus delicti* rule. The *corpus delicti* is the fact that a crime occurred. *People v. Lara*, 2012 IL 112370, ¶ 17. Proof of the *corpus delicti* cannot rest solely on a defendant's extrajudicial admission, confession, or other statement. *Id.* Although a defendant's confession may be integral to proving the *corpus delicti*, the State must also present corroborating evidence independent of the defendant's own statement. *Id.* Where a defendant's confession is not corroborated by other

evidence, a conviction based exclusively on that confession cannot be sustained. *People v. Willingham*, 89 Ill. 2d 352, 358-59 (1982).

¶ 30     Here, defendant's statement that the cocaine was his was not the only evidence against him. Police had recovered defendant's birth certificate, social security card, vaccination card, high school identification card, and mail in the same bedroom where the cocaine was found. Ramos also recovered a metal box containing $7287 in cash in that bedroom, and defendant told Ramos and Reina that the money was his. Consequently, the *corpus delicti* rule was not violated.

¶ 31     For these reasons, we affirm the judgment of the circuit court of Cook County.

¶ 32     Affirmed.