NOTICE

Decision filed 05/04/21. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2021 IL App (5th) 180364-U

NO. 5-18-0364

IN THE

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Fayette County. |
| | ) | |
| v. | ) | No. 16-CF-214 |
| | ) | |
| REBECCA L. FORBES, | ) | Honorable |
| | ) | Don M. Sheafor Jr., |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE CATES delivered the judgment of the court.
Presiding Justice Boie and Justice Vaughan concurred in the judgment.

**ORDER**

¶ 1    *Held*: The State presented sufficient evidence to establish the *corpus delicti* supporting the defendant's conviction of obstruction of justice. The defendant waived the issue of whether the trial court committed plain error in the admission of testimony regarding the contents of and interpretation of video evidence, and the defendant did not receive ineffective assistance of counsel.

¶ 2    Rebecca L. Forbes, the defendant, appeals from her conviction of obstruction of justice (720 ILCS 5/31-4(a)(1) (West 2016)), contending that the State did not prove her guilty beyond a reasonable doubt for failing to establish the *corpus delicti*, and that the trial court committed plain error in the admission of certain testimony. We affirm.

¶ 3                                    BACKGROUND

¶ 4      On September 7, 2016, the State charged the defendant by information with obstruction of justice in violation of section 31-4(a)(1) of the Criminal Code of 2012 (720 ILCS 5/31-4(a)(1) (West 2016)). The State filed an amended information on May 9, 2018, and a second amended information on May 11, 2018. The second amended information alleged that on or about July 21, 2016, the defendant, with the intent to obstruct the prosecution of Hardie Shafer for the offense of unlawful possession of weapon by a felon, knowingly concealed physical evidence, a 9-millimeter handgun, in that she removed evidence from Shafer's residence.

¶ 5      The defendant waived her right to a jury trial, and on May 11, 2018, the cause proceeded to a bench trial. The evidence adduced at trial, viewed in the light most favorable to the verdict, is as follows.

¶ 6      On July 21, 2016, at approximately 1:30 a.m., police officers conducted a traffic stop on Shafer's vehicle. Detective Jake Bowling, a police officer with the City of Vandalia, responded to the scene to assist with the stop. During a search of Shafer's vehicle, police discovered a large amount of currency, four grams of methamphetamine, one gram of cocaine, and ammunition. Bowling testified he was aware that Shafer had a previous felony conviction and was not permitted to possess any firearms. At approximately 4 a.m., Shafer consented to a search of his residence, which was located in rural Fayette County. When officers arrived at Shafer's residence sometime before 5 a.m. to conduct the search, Lyndsay Doehring, Shafer's daughter, was in her vehicle outside the home. Doehring advised officers that she was there to check on her mother, Jana Shafer, who was inside the

home and bedridden due to medical issues. Bowling stated he did not believe that Doehring had entered the home prior to the police arriving because the officers had to gain access to the home through an unlocked window. Bowling stated the officers were searching for anything illegal inside of the home, including weapons and controlled substances. Bowling testified the officers recovered 9-millimeter ammunition from one of the bedrooms, but that they did not find any guns.

¶ 7 Shafer testified that he and the defendant dated for approximately two years before he was incarcerated in 2018. Shafer testified that his home was "under construction" in 2016, and that "a lot of people were staying" there. Shafer stated that his wife, son, and daughter also lived at his residence "on and off" at this time. Shafter testified he had an extensive criminal history, and that his first felony conviction was in 2014. The State submitted into evidence a document indicating Shafer pled guilty to a Class 3 felony in cause number 14-CF-165.

¶ 8 Brian Glidden, the administrator of the Fayette County jail, testified the jail has had a videoconferencing system to conduct inmate visits for seven years. The videoconferencing system allows the visitors and the inmate to see each other while they are talking on the phone. Glidden stated the system records the audio and visual components of the inmate's conversations with their visitors. Both the inmate and the visitors are advised that the conversations are being recorded prior to the visit. Glidden testified he monitors these calls and that he brings anything of interest to the attention of the appropriate law enforcement authority.

¶ 9    On July 23, 2016, the defendant and her friend, Elizabeth Donaldson, visited Shafer at the Fayette County jail. The visit was recorded by the jail's videoconferencing system. After reviewing the recorded conversation, Glidden downloaded the recording from the system and transferred the data to a disc, which he then provided to Detective Bowling. Glidden identified People's Exhibit 1 as the disc he created and gave to Bowling. The video was played in open court but was not reported or transcribed by the court reporter. The following exchange was recorded:[1]

> "The Defendant: You know I started to turn in there that night.
>
> Shafer: You started what?
>
> The Defendant: Turn in there, where you was at.
>
> Shafer: Did ya?
>
> The Defendant: I started to turn in there. I started freaking out. Started uh … like, oh God, started sweating.
>
> Shafer: Yeah.
>
> The Defendant: And [inaudible] like [inaudible] you better not fucking turn in there.
>
> Shafer: Yeah, something was up ... with that night, something really was.
>
> The Defendant: Why do you say that?
>
> Shafer: Because it was kinda like a … um … I don't know it just felt funny, man. I felt funny that whole night.

---

[1]The audio of the recording was not transcribed by the court reporter and no transcript of the recording was admitted into evidence. The representation of the contents of the conversation set forth in this order is based upon this court's viewing of the recording admitted into evidence and included in the record on appeal. This court has made its best attempt to accurately reflect the contents of the recording, or to acknowledge when the audio was not sufficiently clear to ascertain the statements being made.

The Defendant: Oh.

Shafer: Yeah, I don't know.

The Defendant: I went to your house, you know that.

Shafer: Huh?

The Defendant: I went to your house.

Shafer: Yeah, what about it?

The Defendant: ... you know ...

Shafer: Yeah, when the cops was there and everything? Yeah.

The Defendant: Before.

Shafer: Oh, did you? Cool.

The Defendant: mhmm, yeah.

Shafer: Clean everything up for me? My girl. I love you.

The Defendant: I tried. I tried.

Shafer: God, I love you.

The Defendant: I was scared to death. But, I waited ... oh God ... I wanted to puke.

\*\*\*
The Defendant: I got, um, um, uh …"

¶ 10    The defendant paused for several seconds and looked at Donaldson, before the conversation continued:

"Shafer: Just say …

Donaldson: [inaudible] hunting license.

The Defendant: … my hunting license. I got my FOID.

5

Shafer: Okay, oh cool! Cool! God damn, I love you!

The Defendant: (laughing) I love you, too.

Shafer: Yeah, did you get the one out of the laundry room, too?

The Defendant: Was it a 9-millimeter?"

¶ 11    At this point in the video, the defendant begins laughing, covers her mouth, and glances at Donaldson.

"Shafer: Yeah, laundry room?

The Defendant: (laughing) Yeah, I think so.

Shafer: Above the washing machine?

The Defendant: Yep, I think so.

Shafer: God, I love you! You are such a ... beautiful, God ...

The Defendant: I love you, too ... a bunch of, um ... a bunch of shit.

Shafer: Oh, I love you so much! God damn, I love you.

The Defendant: I love you."

¶ 12    Later in the visit, the following exchange took place:

"Shafer: They took five grand in cash from me that night, too.

The Defendant: Oh, my God. *** That's crazy. *** What did you get caught with, babe?

Shafer: Under five.

The Defendant: Oh, under five. Thank God.

Shafer: Look on Judici just to make sure. Because …

The Defendant: I did look on Judici, it's not even on there, babe.

6

Shafer: It's not on there? What's it say? Just …

The Defendant: Nope. Traffic.

Shafer: Ain't that crazy.

***

Shafer: … I had that, uh, I had that other, but I ditched it, and I forgot about the other, and …

The Defendant: Really?

Shafer: Yeah.

The Defendant: Where at? Because oh, God.

Shafer: Yeah, I threw it out, threw it out there in the bank.

The Defendant: Awesome.

Shafer: Right … Out in the field …

The Defendant: Okay."

¶ 13 After the video was played in court, the State asked Glidden why he decided to bring this conversation to Detective Bowling's attention. Glidden responded that he believed the defendant and Shafer "were trying to hide something" based on the substance of the conversation. Glidden stated that he knew methamphetamine had been found during the traffic stop of Shafer's vehicle, and that the police had searched Shafer's property for weapons or illegal substances.

¶ 14 Detective Bowling testified that he reviewed the video recording of the conversation between Shafer and the defendant. Bowling testified that the defendant referenced getting a FOID card and a hunting license during the call; however, a record search revealed that the defendant did not possess either.

7

¶ 15    The record indicates that the State played a portion of the video recording in open court, then stopped the recording to ask Bowling questions about the portion played before repeating the cycle several times. Throughout the State's direct examination, Bowling repeatedly testified as to what he believed the video depicted as far as the defendant's and Shafer's statements to each other, and Bowling was also asked to offer his interpretation as to the meaning of the recorded statements. Bowling testified that the defendant told Shafer that she went to his house before the police arrived to search it and that "she cleaned up the house." Bowling stated he believed this meant that the defendant "took stuff out of the residence." Bowling testified that he believed the defendant's reference to her "hunting license and FOID card," meant that "she found the gun" in Shafer's home. Bowling also testified that when Shafer asked the defendant about the "washing machine," the defendant asked Shafer if it was a "9-millimeter." Bowling stated that, based on his experience as a police officer, a "9-millimeter" is a reference to a handgun. Bowling testified this was also consistent with the officers having recovered 9-millimter ammunition from Shafer's home. Bowling testified there was evidence that someone had recently been at Shafer's house because there were "fresh tire tracks" that led from the road, through the grass, to the back of Shafer's residence. Bowling testified that when he interviewed the defendant, she initially denied knowing that Shafer had been arrested. Bowling stated that when he confronted the defendant with the video recording, the defendant admitted to talking to Shafer but not to taking any guns from Shafer's home.

¶ 16    During cross-examination, defense counsel also questioned Bowling about the events depicted in the video recording and his interpretation of the meaning of the

8

defendant's statements. Upon questioning by defense counsel, Bowling indicated that he could not understand "every single word" in the video but that the defendant mentioned obtaining her FOID card and hunting license, that he was "certain" the defendant mentioned a "9-millimeter" in reference to the laundry room. Defense counsel also elicited testimony from Bowling that he believed the defendant "removed stuff from the residence" based on the defendant's statement that she "clean[ed] up everything." Bowling acknowledged that he did not have any training or background in forensics or tire track examination, and that the police did not contact a forensic unit or expert to have the tire tracks examined. During redirect, Detective Bowling testified that the purpose of a FOID card is to carry a firearm, and he believed the defendant told Shafer she had her FOID card and hunting license to insinuate that she recovered a firearm from his home.

¶ 17    In closing argument, the defense argued the State had not proven the defendant guilty beyond a reasonable doubt because it failed to present corroborating evidence, independent of the defendant's incriminating statement, establishing the *corpus delicti*, namely that the defendant removed a gun from Shafer's residence. The State argued that the presence of 9-millimeter ammunition in the home and the fresh tire tracks in the yard were sufficient corroborating evidence to establish the *corpus delicti*.

¶ 18    The court found the State had met its burden of proof by presenting sufficient corroborating evidence of the *corpus delicti* and found the defendant guilty of obstruction of justice. In support if its finding of guilt, the court indicated that, based on his observation and interpretation of the videotaped conversation, he believed they were attempting to "talk in code" about the items the defendant had removed from Shafer's home and that the

9

defendant knew she had made a mistake when she asked Shafer about the "9-millimeter." The court noted that while the defendant mentioned she had "cleaned out a lot of stuff" from Shafer's home, there was no evidence to support a conviction on any contraband other than a 9-millimeter handgun.

¶ 19    On June 11, 2018, the defendant filed a motion for new trial, again arguing the State failed to prove her guilty beyond a reasonable doubt for failing to present corroborating evidence of the *corpus delicti*. After conducting a hearing on the motion, the court denied the defendant's motion, finding the State presented sufficient corroborating evidence to sustain the defendant's conviction. On June 25, 2018, the court sentenced the defendant to 18 months of conditional discharge, in accordance with the parties' agreed sentencing recommendation. This appeal follows.

¶ 20                                  ANALYSIS

¶ 21                                Corpus Delicti

¶ 22    On appeal, the defendant argues the State did not to meet its burden of proving her guilty beyond a reasonable doubt because it failed to present corroborating evidence, independent of her incriminating statements, to satisfy the *corpus delicti* rule. On review of a challenge to the sufficiency of the evidence, this court determines whether any rational trier of fact could have found the required elements beyond a reasonable doubt. *People v. Newton*, 2018 IL 122958, ¶ 24. The evidence, and all reasonable inferences therefrom, are viewed in the light most favorable to the verdict. *People v. Wheeler*, 226 Ill. 2d 92, 114, 116-17 (2007). The trier of fact is in the best position to judge the credibility of the witnesses, and its findings concerning credibility are accorded great weight. *Wheeler*, 226

10

Ill. 2d at 114-15. On review, this court does not retry the defendant. *Wheeler*, 226 Ill. 2d at 114. We will reverse the verdict only where the evidence is so unreasonable, improbable, or unsatisfactory that it raises a reasonable doubt of the defendant's guilt. *Wheeler*, 226 Ill. 2d at 115.

¶ 23 "The *corpus delicti* of an offense is simply the commission of a crime." *People v. Lara*, 2012 IL 112370, ¶ 17. To sustain a conviction, the State must prove that (1) a crime occurred, *i.e.*, the *corpus delicti*, and (2) the crime was committed by the defendant. *People v. Harris*, 333 Ill. App. 3d 741, 744 (2002). The *corpus delicti* rule arose from the courts' mistrust of out-of-court confessions, generally attributed to some individuals' tendency to confess to offenses that they did not commit or did not occur, and to the unreliability of coerced confessions. *Lara*, 2012 IL 112370, ¶ 19. "In general, the *corpus delicti* cannot be proven by a defendant's admission, confession, or out-of-court statement alone." *Lara*, 2012 IL 112370, ¶ 17. When a defendant's confession or admission is part of the proof of the *corpus delicti*, the State must also provide independent corroborating evidence. *Lara*, 2012 IL 112370, ¶ 17.

¶ 24 The independent corroborating evidence alone does not need to establish beyond a reasonable doubt that an offense occurred. *Harris*, 333 Ill. App. 3d at 744; *Lara*, 2012 IL 112370, ¶ 18. Instead, the *corpus delicti* rule is satisfied if the independent evidence, or the reasonable inferences therefrom, tends to prove that a offense occurred and corroborates some of the circumstances contained in the defendant's confession or admission. *Lara*, 2012 IL 112370, ¶ 45. The corroborating evidence must only "correspond" with the confession, it does not need to affirmatively verify every element of the charged offense.

11

*Lara*, 2012 IL 112370, ¶ 45. "If the corroborating evidence is sufficient, it may be considered, together with the defendant's confession, to determine if the State has sufficiently established the *corpus delicti* to support a conviction." *Lara*, 2012 IL 112370, ¶ 18. The same evidence may be considered to prove both the existence of the crime and the guilt of the defendant, the question being whether all the evidence proves that a crime was committed, and that the accused committed it. *People v. Willingham*, 89 Ill. 2d 352, 359 (1982).

¶ 25    A person commits the crime of obstructing justice when, with the intent to prevent the prosecution of any person, he or she knowingly destroys, alters, conceals, or disguises physical evidence. 720 ILCS 5/31-4(a)(1) (West 2016). The defendant was charged with obstructing justice by knowingly concealing physical evidence, specifically a 9-millimeter handgun, by removing the evidence from Shafer's residence, with the intent to obstruct the prosecution of Shafer for the offense of unlawful possession of weapon by a felon. The defendant argues the State violated the *corpus delicti* rule and failed to prove her guilty beyond a reasonable doubt, in that the only evidence of the defendant's guilt was her uncorroborated videotaped statements to Shafer. The defendant contends there was no evidence corroborating the presence of a 9-millimeter handgun in Shafer's residence on July 21, 2016, or that the defendant removed the gun sometime before 5 a.m. when the police conducted the search of Shafer's home.

¶ 26    Here, the defendant's admission that she "cleaned" illegal items from Shafer's residence before the police search, including a 9-millimeter, was part of the proof of the *corpus delicti*. As such, the State was required to provide corroboration for the removal of

12

a 9-millimeter gun from Shafer's residence prior to the search. The defendant argues that the State's corroborating evidence was insufficient because the presence of 9-millimeter ammunition in the home, the defendant's lack of a FOID card or hunting license, and the presence of "fresh tire tracks" at Shafer's residence did not corroborate the elements of the offense. Specifically, the defendant contends that "the presence of ammunition and absence of a gun is not substantive evidence of a gun's removal—or even its existence."

¶ 27    The defendant mischaracterizes the level of proof necessary to corroborate a defendant's incriminating statement to establish the *corpus delicti*. As already noted, the independent corroborating evidence alone does not need to establish that an offense occurred. *Harris*, 333 Ill. App. 3d at 744; *Lara*, 2012 IL 112370, ¶ 18. If the evidence corroborates the facts contained in the confession, the independent evidence may be considered together with the confession in proving the *corpus delicti*. *Lara*, 2012 IL 112370, ¶¶ 18, 45.

¶ 28    Here, the defendant's voluntary, videotaped statements to Shafer that she "started to turn in [where Shafer was] that night" and she "started freaking out [and] sweating" suggest that she had witnessed Shafer in an upsetting situation. The defendant's statements also indicate that she was aware that Shafer had illegal items or substances in his vehicle or on his person when he was pulled over by police for a traffic stop. At trial, the State presented evidence of facts that corresponded to these statements by the defendant. Specifically, Detective Bowling testified that the search of Shafer's residence was precipitated by police officers discovering controlled substances and ammunition during a traffic stop of Shafer's vehicle. More importantly, the State presented evidence that 9-

13

millimeter ammunition was recovered from Shafer's residence during the search. While the presence of the 9-millimeter ammunition in Shafer's residence alone does not establish beyond a reasonable doubt that a 9-millimeter handgun was removed from Shafer's home, as corroborating evidence of the *corpus delicti*, it was not necessary for the evidence to rise to that level of proof. The independent evidence that police recovered 9-millimeter ammunition from Shafer's home corresponds to the defendant's admission that she "tried" to "clean" Shafer's residence, including removing a 9-millimeter handgun, from Shafer's residence after his arrest but before the police searched his home. The fact that ammunition matching the caliber of the weapon allegedly removed by the defendant was found in Shafer's home, corroborates the defendant's statement suggesting that she removed the weapon from the home.

¶ 29   It is clear from the record that the fact finder listened carefully to the recording and based its decision not only on the defendant's incriminating statements, but also on the corroborating evidence of the 9-millimeter ammunition found during the search of Shafer's home. As such, the trial court could consider the defendant's statement and the corroborating evidence in deciding whether the State met its burden of proof in establishing the *corpus delicti* of obstruction of justice. Based on our review of the record, we find the State presented sufficient independent evidence which tended to show that an offense occurred, and which corroborated the facts contained in the defendant's recorded admissions. We find that the State established the *corpus delicti* and presented sufficient evidence to establish the defendant's guilt beyond a reasonable doubt.

14

¶ 30              Opinion Testimony Regarding the Video Recording

¶ 31    In her second point on appeal, the defendant argues the trial court plainly erred in allowing Glidden and Bowling to testify as to their understanding of the contents of the recording and their interpretation of the meaning of the defendant's statements. Alternatively, the defendant argues her trial counsel was ineffective for failing to object to the admission of the testimony.

¶ 32    Photographs and videotapes may be introduced as substantive evidence so long as a proper foundation is laid for their admission. *People v. Taylor*, 2011 IL 110067, ¶ 32. This evidence is frequently admitted under the "silent witness" theory, under which a witness does not need to testify as to the accuracy of the image depicted in the photograph or videotape, if the accuracy of the process that produced the evidence is sufficiently established with an adequate foundation. *Taylor*, 2011 IL 110067, ¶ 32. The evidence is received as a "silent witness" or as a witness which can "speak for itself." *Taylor*, 2011 IL 110067, ¶ 32.

¶ 33    In considering the admissibility of lay witness opinion testimony, Rule 701 of the Illinois Rules of Evidence provides:

> "If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Ill. R. Evid. 701 (eff. Jan. 1, 2011).

¶ 34    Rule 704 provides that "testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the

15

trier of fact." Ill. R. Evid. 704(a) (eff. Jan. 1, 2011). Rule 704(a) excludes opinion testimony of a lay witness " 'whenever inferences and conclusions can be drawn by the jury as well as by the witness ***.' " *People v. Sykes*, 2012 IL App (4th) 111110, ¶ 36 (quoting *Freeding-Skokie Roll-Off Service, Inc. v. Hamilton*, 108 Ill. 2d 217, 221 (1985)). Generally, when a video is admitted as substantive evidence, the evidence "speaks for itself" and a witness's opinion as what the video depicts is inadmissible because it invades the province of the fact finder. *Sykes*, 2012 IL App (4th) 111110, ¶¶ 36, 38.

¶ 35 The admission of evidence is a decision ordinarily within the sound discretion of the trial court. *Sykes*, 2012 IL App (4th) 111110, ¶ 30. The question of whether it was proper for the State's witness, who had no personal knowledge of the events portrayed in the video, to narrate the contents of a video is a legal issue which is reviewed *de novo*. *Sykes*, 2012 IL App (4th) 111110, ¶ 30. The defendant failed to preserve this issue for appeal by objecting to the admission of the testimony at trial and by failing to raise the issue in a posttrial motion. See *People v. Sebby*, 2017 IL 119445, ¶ 48 (to preserve issue for appeal, party must object to the error at trial and raise the error in a posttrial motion). Having forfeited the issue, the defendant requests this court to review her claim for plain error.

¶ 36 The defendant asserts that the testimony of Glidden and Bowling regarding their observations of the videotape was inadmissible lay opinion testimony and invaded the province of the fact finder. The defendant also argues the court erred in allowing the witnesses to testify as to their interpretations of the meaning of the defendant's statements. While we agree with the defendant that the admission of this evidence was improper, the

16

defendant not only forfeited the issue by failing to object, but also waived her challenge to the error by procuring similar lay opinion testimony on cross-examination.

¶ 37 During cross-examination, defense counsel questioned Bowling about the events depicted in the video recording and his interpretation of the meaning of the defendant's statements. This included eliciting testimony from Bowling that in recorded statements, the defendant mentioned a "9-millimeter" in reference to Shafer's laundry room, and that she obtained her FOID card and hunting license. Defense counsel also elicited testimony from Bowling that he believed the defendant "removed stuff from the residence" based on the defendant's statement that she "clean[ed] up everything."

¶ 38 "When a party procures, invites, or acquiesces in the admission of evidence, even though the evidence is improper, that party cannot contest the admission on appeal." *People v. Caffey*, 205 Ill. 2d 52, 114 (2001). When a party elicits inadmissible evidence at trial, any error is waived for purposes of appeal. *Caffey*, 205 Ill. 2d at 113; *People v. Sanders*, 2012 IL App (1st) 102040, ¶ 30 (invited errors are not subject to plain-error review). In this case, even though the admission of the lay opinion testimony of Glidden and Bowling was error, any challenge to the error was waived due to defense counsel's voluntary questioning regarding the inadmissible evidence.

¶ 39 Alternatively, the defendant argues her trial counsel was ineffective for failing to object to the admission of this testimony at trial. To establish ineffective assistance of counsel, the defendant must prove that counsel's performance was deficient, in that it fell below an objective standard of reasonableness, and that she suffered prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A defendant's failure to satisfy either prong of

17

the *Strickland* inquiry is fatal to his or her claim of ineffective assistance of counsel. *People v. Albanese*, 104 Ill. 2d 504, 527 (1984).

¶ 40 Defense counsel's conduct is presumed to fall within the wide range of professionally reasonable assistance. *People v. Rodriguez*, 364 Ill. App. 3d 304, 312 (2006). Furthermore, there is a strong presumption that counsel's action or inaction was the product of sound trial strategy. *People v. Coleman*, 183 Ill. 2d 366, 397 (1998). Counsel's strategic choices are virtually unchallengeable. *People v. Manning*, 241 Ill. 2d 319, 333 (2011). Matters of trial strategy generally do not support a claim of ineffective assistance of counsel unless counsel failed to conduct any meaningful adversarial testing of the State's case. *People v. Patterson*, 217 Ill. 2d 407, 441 (2005).

¶ 41 To establish prejudice, the defendant must show that, but for counsel's deficient performance, there is a reasonable probability that the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 687. "A reasonable probability is a probability sufficient to undermine confidence in the outcome, namely, that counsel's deficient performance rendered the result of the trial unreliable or the proceeding fundamentally unfair." *People v. Enis*, 194 Ill. 2d 361, 376-77 (2000). Based upon our review of the record, we find the defendant has failed to establish either prong of the *Strickland* test.

¶ 42 Here, the State's evidence included a video recording of the defendant's incriminating statements. While trial counsel's primary defense strategy was to challenge whether the State presented sufficient corroborating evidence of the *corpus delicti*, counsel also attempted to sow doubt about the contents and meaning of the defendant's recorded statements through her cross-examination of Bowling. This was a strategic decision, and

18

entirely reasonable given the difficult circumstance of attempting to mount a defense against the defendant's recorded incriminating statements.

¶ 43 Furthermore, even if defense counsel's trial strategy was unreasonable, the defendant has failed to demonstrate that she was prejudiced by counsel's alleged error. In a bench trial, the trial judge is presumed to have relied only on competent and admissible evidence in rendering the verdict. *People v. Naylor*, 229 Ill. 2d 584, 603 (2008). This presumption may only be rebutted by a clear showing to the contrary. *Naylor*, 229 Ill. 2d at 603-04.

¶ 44 On appeal, the defendant acknowledges that the video recording in this case was "short, clear, and easily interpreted," and that Bowling testified that he did not require multiple viewings of the video to hear or understand most of the defendant's conversation with Shafer. The record indicates that the video was repeatedly played for the court during trial. In rendering its verdict, the trial court indicated that his decision was based on his impressions "from listening to" and "looking at the video." The record does not suggest that the court was relying on the testimony of Glidden or Bowling regarding the contents of the video, instead of his own perceptions of it, in rendering his verdict. Although the testimony of Glidden and Bowling simply repeating portions of what was clearly being said in the video was inadmissible, defense counsel's decision not to object to the admission of the testimony and her decision to cross-examine Bowling on the contents of the video were not prejudicial.

¶ 45 The defendant has also failed to demonstrate that she was prejudiced by defense counsel's decision not to object to, and the procurement of, the lay opinion testimony

19

interpreting the meaning of the defendant's conversation with Shafer. The conversations between the defendant and Shafer have been characterized as "coded." While the participants were not always explicit, the "code" employed by the defendant and Shafer was not indecipherable, and any reasonable trier of fact could have reached the same conclusions reached by the witnesses, *i.e.*, that the conversation was about the defendant removing illegal contraband, including a 9-millimeter handgun, from Shafer's home after his arrest and prior to the police search of Shafer's residence.

¶ 46    The evidence was that the defendant and Shafer were in a relationship in July 2016. The defendant's statements in the video recording can reasonably be interpreted as indicating that the defendant had seen that Shafer had been pulled over by police on the morning of July 21, 2016, and knew or suspected that he had illegal substances in his possession. Concerned that the police may search Shafer's residence, the defendant went to Shafer's home to "clean" it of illegal contraband before the police arrived. This purging included at least one firearm, identified by the defendant as a 9-millimeter, from Shafer's laundry room. The presence of 9-millimeter ammunition, but no 9-millimeter handgun in Shafer's home, supports the finding that the defendant did, consistent with her admission regarding a 9-millimeter handgun, remove the gun from the premises. We find that the defendant has failed to demonstrate that, but for counsel's alleged deficient performance, there was a reasonable probability that the outcome of the proceeding would have been different.

20

¶ 47                                    CONCLUSION

¶ 48    Based on the foregoing, we find the State presented sufficient evidence to support the defendant's conviction of obstructing justice, that the defendant has waived her challenge to the erroneous admission of the lay opinion testimony of Glidden and Bowling, and that the defendant did not receive ineffective assistance of counsel. The judgment of the circuit court of Fayette County is affirmed.


¶ 49    Affirmed.